**REESE RICHMAN LLP**
Michael R. Reese
Kim E. Richman
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email: *mreese@reeserichman.com*
        *krichman@reeserichman.com*


        - and -

**HALUNEN & ASSOCIATES**
Clayton D. Halunen
Susan Coler
Melissa Wolchansky
1650 IDS Center
80 S 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
Email: *Halunen@halunenlaw.com*
        *Coler@halunenlaw.com*
        *Wolchansky@halunenlaw.com*

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUSTIN T. BASSETT, on behalf of himself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ELECTRONIC ARTS INC.,<br><br>Defendant. | Case No. _____<br><br>**COMPLAINT**<br><br><u>**CLASS ACTION**</u><br><br><u>**DEMAND FOR JURY TRIAL**</u> |

Plaintiff Justin Bassett ("Plaintiff"), on behalf of himself and all others similarly situated, by and through his undersigned counsel, alleges the following based upon his own personal knowledge and the investigation of his counsel. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a proposed class action against Electronic Arts Inc. ("EA" or "Defendant"), maker of entertainment software (such as "video games"), for misleading consumers about their ability to use EA's software to play games with others via the Internet – *i.e.*, that the software was enabled for "online play."

2. Although EA represented to consumers — via product labeling and packaging, as well as other marketing, advertising, and promotional materials — that the software they were purchasing was enabled for online play for an indefinite period of time or, at a minimum, a reasonable time from its release date, causing consumers to pay more for the software than they otherwise would have, consumers are no longer able to play the software online as EA promised they would be able to. EA has decided to "retire" the products. *See* http://www.ea.com/1/service-updates.

3. The products at issue in this action (the "Products") include all software manufactured and marketed by EA that was labeled or otherwise marketed as being enabled for online play but for which online play is no longer available, including all the software listed at http://www.ea.com/1/service-updates. One popular example is FIFA Soccer 2011 for PCs and the video game consoles PlayStation® 3, Wii™, and Xbox 360.

4. During a period of time from March 1, 2007, to the present, Defendant engaged in a widespread marketing campaign to mislead consumers about the availability of online play for the Products even though Defendant knew that such statements were false and misleading.

5. The representation that the Products were enabled for online play is central to the marketing of the Products and is displayed prominently on their packaging. For example, Defendant prominently placed on the packaging for the Products language like that shown in the

images below, which consumers understand to mean that the software was enabled for live, online play:



(for Xbox);



(for Wii™); and



(for PlayStation®).

6. These misrepresentations were uniform and were communicated to Plaintiff and every other member of the Class at every point of purchase.

7. Unfortunately for consumers, EA no longer supports online play for the Products. As a result, the Products do not have the value to consumers that they would have if EA had fulfilled its promise to provide the ability to play online. This is because consumers, including Plaintiff and the other Class members, purchased the Products, at least in part, to play online.

Indeed, Plaintiff and the Class members would either not have purchased the Products or would have paid less for the Products had they known that EA would stop supporting online play.

8.     By deceiving consumers about the availability of online play for the Products as detailed herein, Defendant was able to command a premium price for the Products. Defendant was motivated to mislead consumers for no other reason than to take away market share from competing products, thereby increasing its own sales and profits.

## JURISDICTION AND VENUE

9.     This Court has personal jurisdiction over the parties in this case.

10.     Plaintiff was a citizen of Brooklyn, New York, during the relevant period and, by filing this complaint, consents to this Court having personal jurisdiction over him. Defendant Electronic Arts Inc. is based in Redwood City, California, and it purposefully avails itself of the New York consumer market and provides the Products for sale to at least hundreds of locations within this District and thousands of retail locations throughout New York, where the Products are purchased by thousands of consumers every day.

11.     This Court has original subject-matter jurisdiction over this proposed class action pursuant to 28 U.S.C. § 1332(d), which, under the provisions of the Class Action Fairness Act ("CAFA"), explicitly provides for the original jurisdiction of the federal courts in any class action in which at least 100 members are in the proposed plaintiff class, any member of the plaintiff class is a citizen of a State different from any defendant, and the matter in controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs. The total claims of individual members of the proposed Class (as defined herein) are well in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs. Indeed, as of 2010, EA reported that five million people a day were using its Internet servers (for online play). *See* Ben Parfitt, *'Online Pass is great value for money'*, June 3, 2010, http://www.mcvuk.com/news/read/online-pass-is-great-value-for-money/08246.

12.     Venue is proper in this District under 28 U.S.C. § 1391(a).  Substantial acts in furtherance of the alleged improper conduct, including the dissemination of false and misleading information regarding the nature and/or quality of the Products, occurred within this District.

13.     California law is appropriate for application to the nationwide Class because Defendant has numerous contacts with the state of California.  Defendant does business or transacts business within California.  Defendant maintains its principal offices, as well as agents, in California and is licensed to do, has done, and continues to do business in California.  Defendant's advertising, marketing, pricing, sales, and distribution operations for the Products sold throughout the United States, which form the basis of this litigation, originated from and/or are controlled by Defendant's offices in California.  Furthermore, Defendant directly advertised, marketed, and sold its Products to consumers in California (as well as other states), and much of the harm that resulted from the unlawful conduct alleged herein occurred in California.  Therefore, California's strong interest in applying California law to the nationwide claims outweighs any interests other states or their laws may have.

## PARTIES

14.     Plaintiff Justin Bassett was a resident in Brooklyn, New York, during the relevant period.  Plaintiff purchased several varieties of the Products during the relevant liability period at retail prices while he was a resident of Brooklyn, New York.  For example, in 2010 he purchased EA Sports Madden NFL 10 (Xbox 360) for approximately $59.99; EA Sports NCAA Football 10 (Xbox 360) for approximately $59.99; and, EA Sports Tiger Woods PGA Tour 10 (Xbox 360) for approximately $59.99.  In 2009 he purchased EA Sports NHL 09 (Xbox 360) for approximately $59.99 and EA Sports Tiger Woods PGA Tour 09 (Xbox 360) for $59.99.  In 2008 he purchased EA Sports NHL 08 (Xbox 360) for approximately $59.99.  He relied upon the representation that these EA games were enabled for online play in deciding to purchase the Products.  Had Plaintiff known at the time that he would not be able to play the Products online after a certain amount of time, he would not have purchased the Products or paid the price he paid for the Products.

15.     Defendant Electronic Arts Inc. is incorporated in Delaware.  According to EA's website, http://www.ea.com/about, Defendant's "global headquarters" is in Redwood City, California.  According to records on file with the California Secretary of State, EA's address is 209 Redwood Shores Parkway, Redwood City, California 94065.

16.     EA markets, distributes, and sells the Products throughout New York and nationwide.

## SUBSTANTIVE ALLEGATIONS

17.     Computer games and video games are big business in the U.S.  Two-thirds of U.S. households have members who play video games, and in 2009, for example, the computer and video game industry generated $10.5 billion in revenue.  *See* http://www.esrb.org/about/video-game-industry-statistics.jsp.

18.     According to EA's publicly available financial report for fiscal year 2012: "Electronic Arts (NASDAQ:EA) is a global leader in digital interactive entertainment.  The Company's game franchises are offered as both packaged goods products and online services delivered through Internet-connected consoles, personal computers, mobile phones and tablets. EA has more than 100 million registered players and operates in 75 countries.  In fiscal year 2012, EA posted GAAP net revenue of $4.1 billion.  Headquartered in Redwood City, California, EA is recognized for critically acclaimed, high-quality blockbuster franchises such as The Sims™, Madden NFL, FIFA Soccer, Need for Speed™, Battlefield™, and Mass Effect™. More information about EA is available at http://info.ea.com." Press Release, EA, *Electronic Arts Reports Q4 FY12 and FY12 Financial Results* (May 7, 2012), http://files.shareholder.com/downloads/ERTS/2321231381x0x567078/a6291b84-5360-42ee-861d-f3ef67afcfc6/EA_News_2012_5_7_General.pdf 6.

19.     Despite knowing that it did not intend to allocate resources for online play for the Products indefinitely or for a reasonable time from the release date, EA engaged in a widespread marketing and advertising campaign to portray the Products as being enabled for indefinite online play or, at a minimum, a reasonable time from the release date.

20.     Defendant engaged in this misleading and deceptive campaign to charge a premium for the Products and take away market share from other similar products.

21.     Defendant sold the Products to consumers nationwide, placing the representation "Xbox LIVE"; "nintendo Wi-Fi connection"; and "PlayStation® Network" on the packaging for the Products.

22.     As stated herein, such representations and the widespread marketing campaign portraying the Products as being enabled for online play indefinitely — or, at a minimum, a reasonable time from the release date — are misleading and deceptive to consumers because EA only provided online support for the Products for a limited time.

23.     Consumers frequently rely on labels in making purchase decisions.  Here, Plaintiff and the other Class members reasonably relied to their detriment on Defendant's misleading representations and omissions.  Defendant's misleading affirmative statements about the capability of online play for the Products obscured the material fact that Defendant failed to disclose about the limited nature of its online support for the Products.

24.     Plaintiff and the other Class members were among the intended recipients of Defendant's deceptive representations and omissions.  Defendant made the deceptive representations and omissions on the Products with the intent to induce Plaintiff's and the other Class members' purchase of the Products.  Defendant's deceptive representations and omissions are material in that a reasonable person would attach importance to such information and would be induced to act upon such information in making purchase decisions.  Thus, Plaintiff's and the other Class members' reliance upon Defendant's misleading and deceptive representations and omissions may be presumed.

25.     The materiality of those representations and omissions also establishes causation between Defendant's conduct and the injuries sustained by Plaintiff and the Class.

26.     Defendant's false, misleading, and deceptive misrepresentations and omissions are likely to continue to deceive and mislead reasonable consumers and the general public, as they have already deceived and misled Plaintiff and the other Class members.

27.     In making the false, misleading, and deceptive representations and omissions, Defendant knew and intended that consumers would choose and pay a premium for online-enabled software over comparable products that were not online-enabled, furthering Defendant's private interest of increasing sales for its Products and decreasing the sales of products that are truthfully labeled by Defendant's competitors.

28.     As an immediate, direct, and proximate result of Defendant's false, misleading, and deceptive representations and omissions, Defendant injured Plaintiff and the other Class members in that Plaintiff and the other Class members:

     a.   paid a sum of money for Products that were not as represented;

     b.   paid a premium price for Products that were not as represented;

     c.   were deprived the benefit of the bargain because the Products they purchased were different than what Defendant warranted;

     d.   were deprived the benefit of the bargain because the Products they purchased had less value than what was represented by Defendant;

     e.   did not receive Products that measured up to their expectations as created by Defendant;

     f.   were denied the benefit of truthful software labels; and

     g.   were denied the benefit of online play as promised.

29.     Plaintiff and the other Class members all paid money for the Products.  However, Plaintiff and the other Class members did not obtain the full value of the advertised Products due to Defendant's misrepresentations and omissions.  Plaintiff and the other Class members purchased, purchased more of, or paid more for, the Products than they would have had they known the truth about the limited nature of online play for the Products.  Accordingly, Plaintiff and the other Class members have suffered injury in fact and lost money or property as a result of Defendant's wrongful conduct.

30. Had Defendant not made the false, misleading, and deceptive representations and omissions, Plaintiff and the other Class members would not have been injured. Among other things, they would not have been denied the benefit of the bargain. They would not have suffered the other injuries listed above. Accordingly, Plaintiff and the other Class members have suffered injury in fact as a result of Defendant's wrongful conduct.

## CLASS ALLEGATIONS

31. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following nationwide class (the "Class"):

> all persons in the United States who purchased Defendant's Products (as defined herein) from March 1, 2007, to the date of certification of the Class (the "Class Period"); excluded from the Class are officers and directors of Defendant; members of the immediate families of the officers and directors of Defendant; Defendant's legal representatives, heirs, successors, or assigns; and any entity in which they have or have had a controlling interest.

32. Additionally, Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of a sub-class of:

> all New York residents who purchased Defendant's Products (as defined herein) in New York during the Class Period (the "New York Sub-Class").

33. At this time, Plaintiff does not know the exact number of members of the Class or New York Sub-Class; however, given the nature of the claims and the number of retail stores selling Defendant's Products, Plaintiff believes that members are so numerous that joinder of all of them is impracticable.

34. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class that predominate over questions that may affect individual members include:

> a. Whether Defendant labeled, marketed, advertised, and/or sold the Products to Plaintiff and the other members of the Class using false, misleading, and/or deceptive statements or representations, including statements or representations concerning the nature and/or quality of the Products;

b. Whether Defendant omitted and/or misrepresented material facts in connection with the sales of the Products;

c. Whether Defendant participated in and pursued the common course of conduct complained of herein; and

d. Whether Defendant's labeling, marketing, advertising, and/or selling of the Products as online-enabled constitutes an unfair or deceptive consumer sales practice.

35.     Plaintiff's claims are typical of those of the Class because Plaintiff, like all members of the Class, purchased Defendant's Products bearing the online-enabled representations in a typical consumer setting at a premium price and sustained damages from Defendant's wrongful conduct.

36.     Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel that is experienced in litigating complex class actions. Plaintiff has no interests that conflict with those of the Class.

37.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

38.     The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Federal Rule of Civil Procedure 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

39.     The prosecution of separate actions by members of the Class would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another might not. Additionally, individual actions may be dispositive of the interests of the Class or the New York Sub-Class, even though certain members of the Class or the New York Sub-Class are not parties to such actions.

40.     Defendant's conduct is generally applicable to the Class as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Class as a whole. As such, Defendant's

systematic policies and practices make declaratory relief with respect to the Class as a whole appropriate.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
**(Violation of the California Consumers Legal Remedies Act,
California Civil Code § 1750 *et seq.*)**

41.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

42.     This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.* (the "CLRA"), on Plaintiff's behalf and on behalf of the Class.

43.     Plaintiff and the other members of the Class are "consumers," as the term is defined by California Civil Code § 1761(d), because they bought the Products for personal, family, or household purposes.

44.     Plaintiff, the other members of the Class, and Defendant has engaged in "transactions," as that term is defined by California Civil Code § 1761(e).

45.     The conduct alleged in this Complaint constitutes unfair methods of competition and unfair and deceptive acts and practices for the purposes of the CLRA, and the conduct was undertaken by Defendant in transactions intended to result in, and which did result in, the sale of goods to consumers.

46.     As alleged more fully above, Defendant has violated the CLRA by falsely representing to Plaintiff and the other Class members that the Products were enabled for online play for an indefinite period or, at a minimum, a reasonable time from the release date when, in fact, Defendant intended to stop supporting online play after a definite time period.

47.     As a result of engaging in such conduct, Defendant has violated California Civil Code § 1770(a)(5), (a)(7), and (a)(9).

48.     Pursuant to California Civil Code § 1780(a)(2) and (a)(5), Plaintiff seeks an order of this Court that includes, but is not limited to, an order enjoining Defendant from continuing to engage in unlawful, unfair, or fraudulent business practices or any other act prohibited by law – for example, by requiring that Defendant provide support for online play for the Products.

49.     Plaintiff also seeks monetary damages as allowed under the CLRA.

50.     Plaintiff and the other members of the Class may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

51.     The unfair and deceptive acts and practices of Defendant, as described above, present a serious threat to Plaintiff and the other members of the Class.

52.     THEREFORE, Plaintiff prays for relief as set forth below.

## SECOND CAUSE OF ACTION
### (Violation of the California False Advertising Law, California Business and Professions Code § 17500 *et seq.*)

53.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

54.     This cause of action is brought pursuant to California's False Advertising Law, California Business and Professions Code § 17500 *et seq.* (the "FAL"), on Plaintiff's behalf and on behalf of the California Class.

55.     Such acts of Defendant, as described above, and each of them constitute unlawful business acts and practices.

56.     At all material times, Defendant engaged in a scheme of offering the Products for sale to Plaintiff and the other members of the Class by way of, *inter alia*, commercial marketing and advertising, the World Wide Web (Internet), Product packaging and labeling, and other promotional materials. As described more fully herein, Defendant's portrayal of the Products as enabled for online play was misleading and deceptive because Defendant did not intend to provide online support for the Products indefinitely or, at a minimum, a reasonable time from the release date. Said advertisements and inducements were made within the State of California and

nationwide and come within the definition of advertising contained in the FAL in that such promotional materials were intended as inducements to purchase Defendant's Products and are statements disseminated by Defendant to Plaintiff and the other Class members that were intended to reach Plaintiff and the other Class members. Defendant knew, or in the exercise of reasonable care should have known, that these representations were misleading and deceptive.

57.     In furtherance of said plan and scheme, Defendant has prepared and distributed within the State of California and nationwide – via commercial marketing and advertising, the World Wide Web (Internet), Product packaging and labeling, and other promotional materials – statements that misleadingly and deceptively represent the Products as being enabled for online play. Consumers, including Plaintiff and the other Class members, necessarily and reasonably relied on these materials concerning Defendant's Products. Consumers, including Plaintiff and the other Class members, were among the intended targets of such representations.

58.     The above acts of Defendant, in disseminating said misleading and deceptive statements throughout the State of California to consumers, including Plaintiff and the other members of the Class, were and are likely to deceive reasonable consumers, including Plaintiff and the other members of the Class, by obfuscating the nature and/or quality of the Products, in violation of the "misleading" prong of the FAL.

59.     The business practices alleged above are unlawful under the CLRA, which forbids misleading and deceptive advertising.

60.     Plaintiff and the other members of the Class have suffered injury in fact and have lost money or property as a result of Defendant's violations of the FAL.

61.     As a result, Defendant has been unjustly enriched at the expense of Plaintiff and the other members of the Class. Plaintiff and the Class, pursuant to California Business and Professions Code § 17535, are entitled to an order of this Court enjoining such future conduct on the part of Defendant, and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and restore to any person in interest any money paid for its Products as a result of the wrongful conduct of Defendant.

62.     THEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CAUSE OF ACTION

**(Violation of the California Unfair Competition Law,
California Business and Professions Code § 17200 *et seq.*)**

63.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

64.     This cause of action is brought pursuant to California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq.* (the "UCL").

65.     By committing the acts and practices alleged herein, Defendant has engaged in deceptive, unfair, and unlawful business practices in violation of the UCL.

66.     Defendant has violated the UCL's proscription against engaging in unlawful conduct as a result of its violations of (i) the CLRA, as alleged above, and (ii) the FAL, as alleged above.

67.     As more fully described herein, Defendant's misleading marketing, advertising, packaging, and labeling of the Products is likely to deceive a reasonable consumer.  Indeed, Plaintiff and the other Class members were unquestionably deceived regarding the characteristics of Defendant's Products, as Defendant's marketing, advertising, packaging, and labeling of the Products misrepresented and/or omitted the true nature and/or quality of the Products. Defendant's portrayal of the Products as enabled for online play was misleading and deceptive because Defendant did not intend to provide support for online play for the Products indefinitely or, at a minimum, a reasonable time from the release date.

68.     Plaintiff and the other members of the Class who purchased the Products suffered a substantial injury by virtue of buying a product they would not have purchased and/or paying a premium that they would not have absent Defendant's unlawful, fraudulent, and unfair marketing, advertising, packaging, and labeling.

69.     There is no benefit to consumers or competition from deceptively marketing and labeling products as being enabled for online play indefinitely or, at a minimum, a reasonable

time from the release date when that is not, in fact, true. Indeed, the harm to consumers and competition is substantial.

70. Plaintiff and the other members of the Class who purchased the Products had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, and labeled. Thus, they could not have reasonably avoided the injury each of them suffered.

71. The gravity of the consequences of Defendant's conduct as described above outweighs any justification, motive, or reason therefor, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other members of the Class.

72. Defendant's violations of the UCL continue to this day.

73. Pursuant to California Business and Professions Code § 17203, Plaintiff and the other members of the Class seek an order of this Court that includes, but is not limited to, an order enjoining such future conduct on the part of Defendant and such other orders and judgments which may be necessary to disgorge Defendant's ill-gotten gains and to restore to any person in interest any money paid for Defendant's Products as a result of the wrongful conduct of Defendant.

74. THEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION

### (Breach of Express Warranty)

### (on Behalf of the Class and New York Sub-Class)

75. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

76. Defendant provided Plaintiff and other members of the Class with written express warranties including, but not limited to, warranties that its Products were enabled for online play, as set forth above.

77.     Defendant breached these warranties.  This breach resulted in damages to Plaintiff and other members of the Class, who bought Products but did not receive the goods as warranted, in that Defendant did not intend to, and has not, provided support for online play for the Products indefinitely or for a reasonable time from the release date.

78.     As a proximate result of the breach of warranties by Defendant, Plaintiff and the other members of the Class have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for Products that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendant, and they were deprived of the benefit of their bargain and spent money on Products that did not have any value or had less value than warranted, or Products that they would not have purchased and used had they known the true facts about them.

79.     THEREFORE, Plaintiff prays for relief as set forth below.

**FIFTH CAUSE OF ACTION**

**(Breach of Implied Warranty of Merchantability)**

**(On Behalf of the Class and New York Sub-Class)**

80.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

81.     Plaintiff and the other members of the Class purchased Defendant's Products, which were promoted, marketed, advertised, packaged, and labeled as being enabled for online play, as set forth above.  Pursuant to these sales, Defendant impliedly warranted that its Products would be merchantable and fit for the ordinary purposes for which such goods are used and would conform to the promises or affirmations of fact made in the Products' promotions, marketing, advertising, packaging, and labels.  Plaintiff and the other members of the Class relied on Defendant's representations that the Products had particular characteristics, as set forth above, and, at or about that time, Defendant sold the Products to Plaintiff and the other members of the Class.  By its representations regarding the reputable nature of the company and related entities, and by its promotion, marketing, advertising, packaging and labeling of the Products,

Defendant warranted that the Products were enabled for online play, as set forth herein. Plaintiff and the other members of the Class bought the Products relying on Defendant's representations that the Products were enabled for online play, when, in fact, Defendant did not intend to, and has not, provided online support for the Products indefinitely or for a reasonable time from the release date.

82. Defendant breached the warranty implied at the time of sale in that Plaintiff and the other members of the Class did not receive goods that were as represented and, thus, the goods were not merchantable as fit for the ordinary purposes for which such goods are used or as promoted, marketed, advertised, packaged, labeled, or sold.

83. As a proximate result of this breach of warranty by Defendant, Plaintiff and the other members of the Class have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for Products that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendant, and they were deprived of the benefit of their bargain and spent money on Products that did not have any value or had less value than warranted or Products that they would not have purchased and used had they known the true facts about them.

84. THEREFORE, Plaintiff prays for relief as set forth below.

<u>**SIXTH CAUSE OF ACTION**</u>

**(Breach of Implied Warranty of Fitness for Particular Purpose)**

**(On Behalf of the Class and New York Sub-Class)**

85. Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

86. Plaintiff and the other members of the Class purchased Defendant's Products, which were promoted, marketed, advertised, packaged, and labeled as being enabled for online play. Pursuant to these sales and by its promotion, marketing, advertising, packaging, and labeling, Defendant impliedly warranted that it would support online play for the Products indefinitely or, at a minimum, a reasonable time from the release date as set forth above.

Plaintiff and the other members of the Class bought the Products from Defendant relying on Defendant's skill and judgment in furnishing suitable goods as well as its representation that the Products were enabled for online play, as set forth above. However, Defendant did not intend to provide, and has not provided, online support for the Products indefinitely or for a reasonable time from the release date.

87.     Defendant breached the warranty implied at the time of sale in that Plaintiff and the other members of the Class did not receive Products that were as represented, and thus the goods were not fit for the purpose as promoted, marketed, advertised, packaged, labeled, or sold.

88.     As a result of this breach of warranty by Defendant, Plaintiff and the other members of the Class have suffered damages in an amount to be determined at trial in that, among other things, they purchased and paid for Products that did not conform to what was promised as promoted, marketed, advertised, packaged, and labeled by Defendant, and they were deprived of the benefit of their bargain and spent money on Products that did not have any value or had less value than warranted or Products they would not have purchased and used had they known the true facts about them.

89.     THEREFORE, Plaintiff prays for relief as set forth below.

## SEVENTH CAUSE OF ACTION

### (Violation of New York General Business Law § 349)

### (on behalf of the New York Sub-Class)

90.     Plaintiff realleges and incorporates the above paragraphs of this Class Action Complaint as if set forth herein.

91.     Defendant engaged in false and misleading marketing concerning its Products.

92.     As fully alleged above, by advertising, marketing, distribution, and/or selling the Products to Plaintiff and other members of the New York Sub-Class, Defendant engaged in and continues to engage in deceptive acts and practices.

93.     Plaintiff and the other members of the New York Sub-Class further seek to enjoin such unlawful deceptive acts and practices as described above. Each of the New York Sub-Class

members will be irreparably harmed unless the unlawful actions of the Defendant are enjoined in that Defendant will continue to falsely and misleadingly advertise the healthy nature of its Products. Towards that end, Plaintiff and the New York Sub-Class request an order granting them injunctive relief as follows: an order requiring Defendant to provide support for games it marketing as available for online play so that consumers, can, in fact, play these games online with one another.

94.     In this regard, Defendant has violated, and continues to violate, section 349 of the New York General Business Law (GBL), which makes deceptive acts and practices unlawful. As a direct and proximate result of Defendant's violation of GBL § 349 as described above, Plaintiff and the other members of the New York Sub-Class have suffered damages in an amount to be determined at trial.

95.     THEREFORE, Plaintiff prays for relief as set forth below.

## EIGHTH CAUSE OF ACTION

### (Unjust Enrichment)

### (on behalf of the New York Sub-Class)

96.     Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

97.     As a result of Defendant's deceptive, fraudulent, and misleading labeling, advertising, marketing, and sales of the Products, Defendant was enriched at the expense of Plaintiff and the other members of the New York Sub-Class through the payment of the purchase price for Defendant's Products.

98.     Under the circumstances, it would be against equity and good conscience to permit Defendant to retain the ill-gotten benefits that it received from Plaintiff and the other members of the New York Sub-Class, in light of the fact that the Products purchased by Plaintiff and the other members of the Class were not what Defendant purported them to be. Thus, it would be unjust or inequitable for Defendant to retain the benefit without restitution to Plaintiff

and the other members of the New York Sub-Class for the monies paid to Defendant for such Products.

99.     THEREFORE, Plaintiff prays for relief as set forth below.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment on behalf of himself and the proposed Class providing such relief as follows:

A.      Certification of the nationwide Class and New York Sub-Class proposed herein under Federal Rule of Civil Procedure 23(a) and (b)(3); appointment of Plaintiff as representative of the Class and New York Sub-Class; and appointment of his undersigned counsel as counsel for the Class and New York Sub-Class;

B.      A declaration that Defendant is financially responsible for notifying members of the Class of the pendency of this suit;

C.      Injunctive relief  pursuant to California Business and Professions Code §§ 17203 and 17535 and pursuant to California Civil Code § 1780, enjoining Defendant's unlawful and deceptive acts and requiring Defendant to once again provide online play for the Class for the games sold during that Class Period that were marked for online play;

D.      Monetary damages pursuant to California Civil Code § 1780;

E.      Restitution pursuant to California Business and Professions Code §§ 17203 and 17535;

F.      Disgorgement pursuant to California Business and Professions Code §§ 17203 and 17535;

G.      Injunctive and monetary relief under GBL § 349;

H.      Damages, together with costs and disbursements, including reasonable attorneys' fees;

I.      Monetary damages, including, but not limited to any compensatory, incidental, or consequential damages in an amount to be determined at trial, together with prejudgment interest at the maximum rate allowable by law with respect to the common law claims alleged;

J. Statutory damages in the maximum amount provided by law;

K. Punitive damages in accordance with proof and in an amount consistent with applicable precedent;

L. An award to Plaintiff and the other Class members of the reasonable costs and expenses of the lawsuit, including their attorneys' fees; and

M. Such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated: July 24, 2013

**REESE RICHMAN LLP**

Michael R. Reese
Kim E. Richman
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:     (212) 643-0500
Facsimile:      (212) 253-4272
Email:          *mreese@reeserichman.com*
                 *krichman@reeserichman.com*

**HALUNEN & ASSOCIATES**
Clayton D. Halunen
Susan Coler
Melissa Wolchansky
1650 IDS Center
80 S 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile:  (612) 605-4099
Email: *Halunen@halunenlaw.com*
        *Coler@halunenlaw.com*
        *Wolchansky@halunenlaw.com*

*Counsel for Plaintiff and the Proposed Class*