**REESE RICHMAN LLP**
Michael R. Reese
Kim E. Richman
George Granade
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone: (212) 643-0500
Facsimile: (212) 253-4272
Email: *mreese@reeserichman.com*
        *krichman@reeserichman.com*
        *ggrande@reeserichman.com*

        - and -

**HALUNEN & ASSOCIATES**
Clayton D. Halunen
Susan Coler
Melissa Wolchansky
1650 IDS Center
80 S 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099
Email: *Halunen@halunenlaw.com*
        *Coler@halunenlaw.com*
        *Wolchansky@halunenlaw.com*

*Counsel for Plaintiff and the Proposed Class*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JUSTIN T. BASSETT, on behalf of himself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> ELECTRONIC ARTS INC., <br><br> Defendant. | Case No. 1:13-cv-04208-MKB-SMG <br><br> **PLAINTIFF JUSTIN T. BASSETT'S OPPOSITION TO DEFENDANT ELECTRONIC ARTS, INC.'S MOTION TO COMPEL ARBITRATION OR, ALTERNATIVELY, TO TRANSFER** |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................1

STATEMENT OF FACTS ....................................................................................................3

LEGAL ARGUMENT ..........................................................................................................5

A.      NEW YORK LAW GOVERNS CONTRACT FORMATION AND VALIDITY IN THIS CASE.........................................................................................................5

B.      THE COURT MUST DENY EA'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS .................................................................................7

      1.      The Court Has Jurisdiction to Determine the Threshold Issue of Contract Formation and Whether There Was Agreement to Arbitrate .................................7

      2.      The Arbitration Clause Is Unenforceable, as the TOS Were Not Incorporated into Any Contract .........................................................................8

            a.      The TOS were not incorporated by mention of the TOS and website on the packaging ........................................................................10

            b.      Even if the TOS and website were somehow incorporated into the first contract, the arbitration clause is unenforceable because it is illusory .................................................................................................12

            c.      The TOS were not binding by virtue of a second contract ......................16

                   (i)      The second contract is unenforceable because EA's promises were illusory .............................................................17

                   (ii)      The arbitration clause in the second contract is unenforceable, as it strips Mr. Bassett of his statutory remedies .................................................................................17

                   (iii)      The second contract is unenforceable because access to online play constituted past consideration ...................................20

            d.      In the alternative, the TOS were not incorporated into the second contract because there was no modification of the first contract .............21

      3.      The Arbitration Clause Is Unenforceable Because It Is Unconscionable ............22

            a.      The arbitration clause is procedurally unconscionable...........................23

|   |   | b. | The arbitration clause is substantively unconscionable | 26 |
|---|---|---|---|---|
|   |   |   | (i) | EA's authority to unilaterally modify the arbitration clause makes it substantively unconscionable | 26 |
|   |   |   | (ii) | EA's carve outs of the arbitration clause render it substantively unconscionable | 27 |
|   |   |   | (iii) | EA's limitation on statutory remedies makes the arbitration clause substantively unconscionable | 30 |

4.    EA Failed to Meet Its Burden to Prove the Existence of the Agreement to Arbitrate ........................................................................................................ 31

C.    EA'S ARGUMENTS IN FAVOR OF TRANSFER ARE MERITLESS ....................... 32

    1.    Defendant's Motion to Transfer Is Premature and Should Be Denied in Order to Allow for Discovery on the Issue ........................................................ 32

    2.    Even If the Court Were to Address the Motion to Transfer Now (Which It Should Not), It Should Not Transfer Plaintiff's Case to Another Court .............. 33

        a.    EA presumes applicability of the wrong law .......................................... 34

        b.    Mr. Bassett's contract with EA did not contain a valid and enforceable forum selection provision ................................................... 39

        c.    The forum selection clause is unenforceable because it is illusory .......... 40

        d.    The forum selection provision in the TOS is unconscionable ................. 40

            (i)    EA's authority to unilaterally modify the forum selection clause makes it substantively unconscionable .............................. 41

            (ii)    Unconscionable terms permeate the TOS, and, consequently, the entire TOS are unenforceable ......................... 41

        e.    Even applying the *Bremen* test, the forum selection clause is invalid ................................................................................................... 42

            (i)    EA did not reasonably communicate the forum selection clause to Mr. Bassett ................................................................. 43

            (ii)    The forum selection clauses EA used from August 25, 2011, forward do not apply to Mr. Bassett's action ..................... 44

f.      Refusal to transfer is in the court's discretion under *Atlantic Marine* ........................................................................................ 45

g.      The Court should retain jurisdiction of Mr. Bassett's action under 28 U.S.C. § 1404 .................................................................... 45

CONCLUSION ........................................................................................ 49

CERTIFICATE OF SERVICE ................................................................ 50

<u>**TABLE OF AUTHORITIES**</u>

<small>**CASES**</small>

*AIU Ins. Co. v. TIG Ins. Co.*, 934 F. Supp. 2d 594 (S.D.N.Y. 2013)..............................................6

*Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256 (3rd Cir. 2003).................................................41

*Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304 (2013).........................................17, 19

*Armendariz v. Found. Health Psychcare Serv., Inc.*, 24 Cal. 4th 83 (Cal. 2000).................26, 41

*Asmus Pac. Bell*, 96 Cal. Rptr. 2d 179 (Cal. 2000)....................................................................13

*AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643 (1986)....................................7, 16

*Atl. Marine Constr. Co., Inc. v. U.S. Dist. for W. Dist. of Tex.*,
   134 S. Ct. 568 (2013) ....................................................................................................passim

*Auten v. Auten*, 308 N.Y. 155 (1954)...........................................................................................6

*Bancroft Life & Cas., ICC, Ltd. v. Lo*, No. 12CV1431, 2013 WL 5670878
   (W.D. Pa. 2013) ......................................................................................................................41

*Bar-Ayal v. Time Warner Cable, Inc.*, 2006 WL 2990032, (S.D.N.Y. 2006)............................23

*Barrett v. Metro. Life Ins. Co.*, 331 Fed. App. 794 (2d Cir. 2009)..............................................5

*BG Grp., PLC v. Republic of Arg.*, 134 S. Ct. 1198 (2013) .........................................................7

*Blair v. Scott Specialty Gases*, 283 F.3d 595 (3rd Cir. 2002) .....................................................13

*Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 Fed. Appx. 4
   (2d Cir. 2012).............................................................................................................................7

*Booker v. Robert Half Int., Inc.*, 413 F.3d 77 (D.C. Cir. 2005)...................................................18

*Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377 (S.D.N.Y 2002).......................................26

*Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996
   (9th Cir. 2010).............................................................................................23, 25, 40, 41

*Bright v. Zimmer Spine, Inc.*, No. 14-CV-00095-WMA, 2014 WL 588051
   (N.D. Ala. Feb. 14, 2014).................................................................................................36, 37

*Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382 (W.Va. 2012)..........................................28

*Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585 (1991)....................................34, 35

*Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087 (9th Cir. 2009) ....................................25

*Cline v. Carnival Corp.*, case no. 3:13-cv-1090-B, 2014 WL 550738 (N.D. Tex. Feb. 12, 2014) .......................................................................36

*Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270 (9th Cir. 1979) ........................45

*Cusimano v. Berita Realty, LLC*, 959 N.Y.S.2d 720 (N.Y. App. Div. 2013) .............................31

*D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95 (2d Cir. 2006) .................................. 45, 46, 47

*Damato v. Time Warner Cable, Inc.*, No. 13-cv-994 (ARR)(RML), 2013 WL 3968765 (E.D.N.Y. July 31, 2013)....................................................... 12, 13

*Day v. Fortune Hi-Tech Mktg., Inc.*, 536 Fed. Appx. 600 (6th Cir. 2013) ..................................13

*Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834 (9th Cir. 1986) .........................47

*Dedon GmbH v. Janus et Cie*, 411 Fed. Appx. 361 (2d Cir. 2011)................................................8

*Different Drummer LLC v. Nat'l Urban League, Inc.*, No.. 11 CIV. 4982 KBF, 2012 WL 406907 (S.D.N.Y. Feb. 7, 2012) .................................................. 9, 20, 31

*Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681 (1996)...........................................................22

*Douglas v. U.S. Dist. Ct. for Dist. of Cal.*, 495 F.3d 1062 (9th Cir. 2007)...............................10

*Dumais v. Am. Golf Corp.*, 150 F. Supp. 2d 1182 (D.N.M. 2001) ..............................................13

*Duncan v. Wells Fargo Home Mortg., Inc.*, 487 Fed. Appx. 427 (9th Cir. 2012)....................9, 20

*EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342 (E.D.N.Y. 2012)...........................................................46, 47

*Edme v. Internet Brands, Inc.*, 968 F. Supp. 2d 519 (E.D.N.Y. 2013) .......................................43

*Ellig v. Moina*, No. 12 Civ. 7927(KBF), 2014 WL 521210 (S.D.N.Y. Feb. 10, 2014)..................................................................................20

*Erie Cnty. Water Auth. v. Her-Gar Constr. Corp.*, 473 F. Supp. 1310 (W.D.N.Y. 1979)...............................................................................21

*Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938) ..........................................................................36

i

*E-Z Cash Advance, Inc. v. Harris*, 60 S.W. 3d 436 (Ark. 2001) ................................................27

*Ferens v. John Deere Co.*, 494 U.S. 516, 527, 110 S. Ct. 1274,
108 L. Ed. 2d 443 (1990)......................................................................................................33

*Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778 (9th Cir. 2002)..............................28

*Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484 (S.D.N.Y. 2004)....................................20

*Fin One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325 (2d Cir. 2005).....................5

*Floss v. Ryan's Family Steak House, Inc.*, 211 F.3d 306 (6th. Cir. 2000) ...................................13

*Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1 (N.Y. 1988)...........................................23

*Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847 (2010) ...........................................8

*Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124 (D.D.C. 2001)............................33

*Hameed v. IHOP Franchising LLC*, 520 Fed. Appx. 520 (9th Cir. 2013)............................23, 40

*Hill v. Gateway 2000, Inc.*, 105 F.3d 1148 (7th Cir. 1996)...................................................11, 12

*Hines v. Overstock.com, Inc.*, 380 Fed. Appx. 22 (2d Cir. 2010)........................................10, 31

*Hojnowski v. Buffalo Bills, Inc.*, No. 13-cv-388S, 2014 WL 408717
(W.D.N.Y. Feb. 3, 2014) .................................................................................................23, 40

*Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159
(5th Cir. 2004) ......................................................................................................................27

*In re Ins. Installment Fee Cases*, 211 Cal. App. 4th 1395 (Cal. Ct. App. 2012)..........................20

*Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Super. Ct.*, 133 Cal. App. 4th 396
(Cal. Ct. App. 2005) .......................................................................................................18, 19

*Independence Cnty. V. City of Clarksville*, 386 S.W.3d 395 (Ark. 2012) ...................................27

*Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165 (9th Cir. 2003) ......................................7, 26, 28

*Int. Paper Co. v. Suwyn*, 951 F. Supp. 445 (S.D.N.Y. 1997)......................................................20

*Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372 (N.Y. 1969)............................6

*Iragorri v. United Technologies Corp.*, 274 F.3d 65 (2d Cir. 2001) ...........................................33

*Issacs v. OCE Bus. Serv., Inc.*, No. 13 Civ 0548(JGK), 2013 WL 4744807
(S.D.N.Y. Sept. 4, 2013) ........................................................................................27

*Iwen v. U.S. W. Direct, a Div. of U.S. W. Mktg. Res. Grp., Inc.*, 293 Mont. 512
(Mont. 1999) ........................................................................................................28

*James A. Haggerty Lumber & Mill Work, Inc. v. Thompson Starrett Const. Co.*,
256 N.Y.S.2d 1011 (N.Y. App. Div. 1965) .............................................................20

*JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163 (2d Cir. 2004) ..............................7

*Jones v. GNC Franchising, Inc.*, 211 F.3d 495 (9th Cir. 2000) ....................... 45, 46, 47

*Jones v. Weibrecht,* 901 F.2d 17 (2d Cir. 1990) ........................................................38

*Kramer v. Toyota Motor Corp.*, 705 F.3d 1122 (9th Cir. 2013).....................................8

*Kulig v. Midland Funding, LLC*, No. 13 Civ. 4715(PKC), 2013 WL 6017444
(S.D.N.Y. 2013)................................................................................................5, 6, 21

*Lau v. Mercedes-Benz USA, LLC*, No. CV 11-1940 MEJ, 2012 WL 370557 (N.D.
Cal. 2012) ............................................................................................................18

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972)....................................passim

*Macias v. Excel Bldg. Serv., LLC.*, 767 F. Supp. 2d 1002 (N.D. Cal. 2011) ...............28

*Martinez v. Bloomberg LP*, 740 F.3d 211 (2d Cir. 2014) ......................... 36, 37, 39, 42

*Matter of Allstate Ins. Co. v. Stolarz*, 597 N.Y.S. 2d 219 (N.Y. 1993) ........................6

*Merkin v. Vonage Am. Inc.*, No. 2:13-CV-08026-CAS, 2014 WL 457942
(C.D. Cal. Feb. 3, 2014) ...................................................................................passim

*Metro. Prop. & Cas. Ins. Co. v. Budd Morgan Cent. Station Alarm Co.*,
95 F. Supp. 2d 118 (E.D.N.Y. 2000)................................................................23, 26

*Mitsubishi Motors Corp., v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614 (1985) .....17

*Montes v. San Joaquin Cmty. Hosp.*, No. 1:13-cv-01722-AWI-JLT,
2014 WL 334912 (E.D. Cal. Jan. 29, 2014) ...........................................................26

*Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257 (9th Cir. 2006) ...................................41

*New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102
(2d Cir. 2010)...........................................................................................................45, 46

*Newton v. Am. Debt. Serv., Inc.*, 2013 WL 6501391, No. 12-15549 (9th Cir. 2013)..................25

*NML Capital v. Republic of Arg.*, 621 F.3d 230 (2d Cir. 2010)............................................23, 40

*Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372 (7th Cir. 1990) ....................................................37

*Palm Beach Motor Cars Ltd. v. Jeffries*, 885 So.2d 990 (Fla. Dist. Ct. App. 2004) ...................28

*Passante v. McWilliam*, 53 Cal. App. 4th 1240 (Cal. Ct. App. 1997) ........................................20

*Pease v. Brown*, 186 Cal. App. 2d 425 (Cal. Dist. Ct. App. 1960) .............................................13

*Perez v. Hospitality Ventures-Denver LLC*, 245 F. Supp. 2d 1172 (D. Colo. 2003)...................13

*Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 102 S. Ct. 252, 70 L. Ed. 2d 419
(1981) ........................................................................................................................47

*PowerDsine, Inc. v. Broadcom Corp.*, No. 07-CV-2490(SJF)(WDW),
2008 WL 268808 (E.D.N.Y. Jan. 29, 2008)...........................................................................43

*Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*,
489 F.3d 303 (6th Cir. 2007) .....................................................................................37

*ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996) .....................................................11, 12

*Ramsdell v. Lenscrafters, Inc.*, 135 Fed. Appx. 130 (9th Cir. 2005).........................................26

*Red Bull Assoc. v. Best W. Int'l, Inc.*, 862 F.2d 963 (2d Cir. 1988) ............................................35

*Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393 (2d Cir. 2004) .............................................9, 43

*Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772 (2010)....................................................22

*Rivera v. Am. Gen. Fin. Serv., Inc.*, 259 P.3d 803 (N.M. 2011)..................................................28

*Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394 (Cal. 1996)..........................................31

*Ross Sinclair & Assoc. v. Premier Senior Living, LLC*, 2012 WL 2501115,
(N.D. Cal. June 27, 2012)..........................................................................................31

*Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133 (N.Y. 1989) ...............................................23

*Samson v. NAMA Holdings, LLC*, 637 F.3d 915 (9th Cir. 2010) .............................................7, 9

*Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012) .................................................passim

*Specht v. Netscape Commc'n Corp.*, 306 F.3d 17 (2d Cir. 2002)..................................................9

*Startech, Inc. v. VAS Arts*, 126 F. Supp. 2d 234 (S.D.N.Y. 2000)..............................................20

*Steele v. Am. Mortg. Mgmt. Serv.*, No. 2:12-cv-00085 WBS JFM, 2012 WL 5349511 (E.D. Cal. Oct. 26, 2012) .................................................................26, 28

*Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988).........................................................passim

*Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066 (11th Cir. 1987) (*en banc*).......................36, 37

*Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519 (Cal. Ct. App. 1997)......................................28

*Taylor v. Butler*, 142 S.W.3d 277 (Tenn. 2004) ........................................................................28

*Telenor Mobile Commc'n v. Storm LLC*, 584 F.3d 396 (2d Cir. 2009) ........................................7

*Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003) .....................................................................25, 26

*TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472 (2d Cir. 2011) ........................................35

*Trend Micro Inc. v. RPost Holdings, Inc.*, No. 13-CV-05227-WHO, 2014 WL 1365491 (N.D. Cal. Apr. 7, 2014)............................................................46

*TSR Silicon Res., Inc. v. Broadway Com Corp.*, No. 06 Civ. 9419(NRB), 2007 WL 4457770 (S.D.N.Y. 2007)...................................................................................6

*Van Brunt v. Rauschenberg*, 799 F. Supp. 1467 (S.D.N.Y. 1992) ..............................................20

*Van Dusen v. Barrack*, 376 U.S. 612 (1964)..............................................................................45

*Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754 (9th Cir. 1988) ..................................7

*Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468 (1989) .........................7

*Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276 (S.D.N.Y. 1992).....................35

*Whitney Lane Holdings, LLC v. Sgambettera & Associates, P.C.*, No. 08-CV-2966 JS, 2010 WL 4259797 (E.D.N.Y. Sept. 8, 2010)........................................48

*Wis. Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155 (Wis. 2006) ..........................................28

## Statutes and Other Authorities

1 Samuel Williston Contracts § 43 (3d ed. 1957) ................................................................ 13

28 U.S.C. § 1404 .......................................................................................................... passim

*AHL, EA Sports announce 4-year extension*, NHL, *available at* http://www.nhl.com/ice/news.htm?id=530891 ........................................................ 24

California Business & Professions Code section 17203 ........................................................ 18

California Business & Professions Code section 17206 ........................................................ 18

California Business & Professions Code sections 17500 ...................................................... 18

California Civil Code section 1750 ..................................................................................... 18

California Commercial Code § 2207 ..................................................................................... 9

California Commercial Code § 2209 ............................................................................... 21, 22

California Commercial Code section 2206 ............................................................................. 9

Daemon Hatfield, *PGA Tour, EA Renew Partnership*, IGN, Aug. 2, 2006, *available at* http://www.ign.com/articles/2006/08/02/pga-tour-ea-renew-partnership ........................................................................................................... 24

EA, http://investor.ea.com/releasedetail.cfm?releaseid=762885 (last visited Apr. 30, 2014) ............................................................................................................... 24

Electronic Arts In. Fiscal Year 2013 Proxy Statement and Annual Report, 26, *available at* http://files.shareholder.com/downloads/ERTS/3085163671x0x671716/B89EEE 77-BFBD-446D-AC7D-8D98F64C5BAE/510163_002_Electronic_Arts_BMK.PDF (2013) ...................................... 24

Federal Arbitration Act, 9 U.S.C. § 1 *et seq.* ....................................................................... 18

Federal Rule of Civil Procedure 12 ..................................................................................... 32

Kahlil Thomas, *EA Sports NFL License: CEO Andrew Wilson Says That Company 'Has Agreements in Place' For Future Madden Games*, International Digital Times, Jan. 29, 2014, *available at* http://www.idigitaltimes.com/articles/21686/20140129/ea-sports-nfl-license-ceo-andrew-wilson.htm ......................................................................................... 24

New York General Business Law section 349 ....................................................................18, 19

New York Uniform Commercial Code Law § 2-207 ...................................................................9

New York Uniform Commercial Code Law § 2-209 ...........................................................21, 22

New York Uniform Commercial Code Law § 2-206 ...................................................................9

Plaintiff Justin T. Bassett ("Plaintiff") respectfully submits the following in opposition to the motion Defendant Electronic Arts Inc. ("Defendant" or "EA") filed to compel arbitration or, if the Court declines to compel arbitration, to transfer this matter to another court (the "Motion" or "Def. Mem."). For the reasons stated below, the Court should deny Defendant's Motion in its entirety.

## **INTRODUCTION**

This action alleges Defendant deceived and misled consumers, many of whom are young adults and children, into purchasing its products based upon false pretenses made prominently on the front of the product packaging. The products at issue in this action are video games Defendant manufactured and sold that it labeled as being for online play (the "Product" or "Products"). This prominent front-of-label representation signified to consumers that they would be able to go on the Internet and play the video games live with friends, family, and others. Moreover, online play offers a unique gaming experience for consumers that is not available when just playing the computer. Unfortunately for consumers, Defendant's representations were untrue, as consumers cannot play the games online.

At issue here are simple consumer transactions. Defendant's Products are sold to consumers in retail stores such as Best Buy or Toys"R"Us. The Products are displayed on the store shelves in sealed plastic wrapping, with the front of the packaging facing consumers. The front label of each game contains all of the representations a consumer needs to determine whether to buy the game, including game type (*e.g.*, video football), whether it can be played online, and price. Based upon these representations, the consumer decides to buy the game, takes it off the shelf and to the register, and pays money for it. At that point, the transaction and any associated contractual agreement are complete.

Defendant does not dispute these facts. Rather, in its Motion, Defendant creates a convoluted story based upon a "two contracts" theory. Under Defendant's theory, the contract that occurs when the consumer pays money based upon the Product packaging is meaningless because the consumer waives her rights (such as the right to seek redress in a court of law in the jurisdiction where she purchased the Product) by later entering into a purported "second contract" when she tries to use the game at home for online play. Defendant does not, and cannot, point to any money the consumer paid to enter the "second contract," nor can it, as no such "second contract" ever existed. Moreover, under governing Second Circuit authority, arbitration is not a valid result under the actual facts here, as there is no mutual assent regarding the supposed "second contract." *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110 (2d Cir. 2012). For these reasons, the Court must deny the entirety of Defendant's Motion.

Second, even if the Court were to find the parties formed a "second contract" (which it should not), that second contract is unconscionable and, therefore, unenforceable. It is unconscionable because it is completely one-sided in favor of Defendant, essentially stripping consumers of rights and statutory remedies and forcing them into arbitration, while at the same time reserving for Defendant the right to sue consumers in a court of law. Numerous courts have held that such one-sided "contracts" are unconscionable and unenforceable.

Finally, the Court should also deny Defendant's Motion insofar as it seeks transfer of this case to another court. First, Defendant stated to this court it would not move to transfer until the Court had issued a ruling on its motion to dismiss under Rule 12(b)(6). However, Defendant has not filed such a motion, indicating it would file a Rule 12(b)(6) motion at a later date. Defendant clearly is trying to have this matter transferred to another court in order to make a Rule 12(b)(6) motion in the destination forum. This is a blatant attempt at forum shopping and should be

rejected. For this reason alone, the Court should deny Defendant's Motion to transfer.

Second, the Terms of Service provisions that Defendant claims support its transfer motion are unenforceable for the reasons stated above. Specifically, Plaintiff did not agree to the terms, and the terms themselves are unconscionable. For these additional reasons, the Court should deny Defendant's Motion to transfer.

## STATEMENT OF FACTS

EA is a leading manufacturer of video games that retail for as much as $59.99 or more per title. EA sells millions of these games each year and has profited greatly from their sale.

Consumers, such as Mr. Bassett, typically buy EA's products in retail stores. The Products are displayed in the retail stores with the front of the packaging prominently displayed to the consumer. The front of the packaging contains all the significant information regarding the game, including the title of the game, which reflects what type of game it is (*e.g.*, "NHL Hockey"); the gaming platform on which the game can be played (*e.g.*, Xbox); the price of the game (*e.g.*, $59.99); the rating of the game (akin to movies, *e.g.*, "C – Early Childhood" (content is intended for young children); "E – Everyone" (content is generally suitable for all ages); "T – Teens" (content generally suitable for ages 13 and up)"; *etc.*); and whether the game is intended to be played online for live play with other consumers. The last feature is prominently displayed on the front of the packaging such as follows:



In other words, all of the information a consumer needs to determine whether he or she wants to purchase the Product is displayed on the packaging.

The games are sealed in plastic and can only be unsealed after the consumer has completed his transaction with the store and purchased the game.

Nowhere on or within the packaging of the Products does EA disclose that EA considers any complaint that a consumer might have against it regarding the Products to be subject to arbitration. Furthermore, for the vast majority of the Class Period, even the so-called Terms of Service did not contemplate arbitration, as EA did not add an arbitration provision until relatively recently.

Nor is it stated anywhere on or within the Product packaging that EA considers that any complaint against it must be heard under in California. EA conceals this expectation from consumers despite the fact that most consumers, like Mr. Bassett, do not reside in California and would face hardship if required to travel to California to bring a claim against EA.

Rather, the arbitration clause and the forum selection clause are buried in so-called Terms of Service ("TOS") that are only accessible to the consumer after she has already paid for the Product, unsealed the plastic wrapper, taken the Product home, utilized the Product, and then tried to play online. It is only when a consumer goes online for the live play function that she even has access to the TOS that contains arbitration and forum selection clauses.

Moreover, if the consumer disagrees with the arbitration or forum selection clauses, her sole remedy against EA is cancelation of her account, even if she believes the Product packaging misled her to purchase the game. The TOS make no mention of a refund or return policy. In other words, if a consumer disagrees with the TOS (which, again, are only available to the consumer after she has paid for the Product, taken it home and then utilized the online play portion of the Product), her only remedy is to quit using the Product, as EA will not refund the consumer the money she already paid for it.

Finally, the TOS limits a consumer's right to seek a remedy in a court of law to claims involving intellectual property; theft, piracy, or unauthorized use; or claims in small claims court. All of these are claims EA is far more likely to bring against consumers than consumers are likely to bring against EA.

Like the typical consumer, Mr. Bassett did not know of the arbitration or forum selection clauses and did not agree to either of them. Rather, like the typical consumer, Mr. Bassett relied upon the information prominently contained on the front of the packaging, discussed above, in deciding to complete his transaction and purchase the Products.

## **LEGAL ARGUMENT**

## A.   **NEW YORK LAW GOVERNS CONTRACT FORMATION AND VALIDITY IN THIS CASE**

EA suggests the Court should apply California law in determining whether the parties formed a valid contract merely because the TOS contain a California choice-of-law clause. This is wrong. "The validity of a contractual choice-of-law clause is a threshold question that must be decided not under the law specified in the clause, but under the relevant forum's choice-of-law rules governing the effectiveness of such clauses." *Kulig v. Midland Funding, LLC*, No. 13 Civ. 4715(PKC), 2013 WL 6017444, at *3 (S.D.N.Y. 2013) (quoting *Fin One Pub. Co. v. Lehman Bros. Special Fin., Inc.*, 414 F.3d 325, 332 (2d Cir. 2005)); *see also Schnabel*, 697 F.3d at 119 ("Applying the choice-of-law clause to resolve the contract formation issue would presume the applicability of a provision before its adoption by the parties has been established."); *Barrett v. Metro. Life Ins. Co.*, 331 Fed. App. 794, 795 (2d Cir. 2009) ("Because federal jurisdiction in this case is based on diversity of citizenship, the conflict-of-law-rules of the forum state, New York, determine which state's law governs.").

Accordingly, this Court should look to New York's conflicts-of-law rules to determine which law applies to the issues of contract formation and validity.

"New York analyzes choice-of-law questions in contract cases by applying 'center of gravity' or 'grouping of contacts' theory." *TSR Silicon Res., Inc. v. Broadway Com Corp.*, No. 06 Civ. 9419(NRB), 2007 WL 4457770, at *3 (S.D.N.Y. 2007). "Courts are encouraged to consider a 'spectrum of significant contacts,' such as 'the place of contracting, negotiation and performance . . . to determine the state having the greatest interest in or most significant relationship to the transaction and the parties.'" *Id.*; *Matter of Allstate Ins. Co. v. Stolarz*, 597 N.Y.S. 2d 219, 227 (N.Y. 1993); *Kulig*, 2013 WL 6017444, at *4. "The nature of the contract dispute dictates the relative weight of each of the factors listed above such that 'matters bearing upon the *execution*, the interpretation and the *validity* of contracts are determined by the law of the place where the contract is made . . . .'" *TRS Silicon*, 2007 WL 4457770, at *3 (quoting *Auten v. Auten*, 308 N.Y. 155, 160 (1954)) (emphasis added). "Under New York law, a 'contract [is] deemed made in the State where the last act necessary to make it binding takes place according to the law of contracts.'" *AIU Ins. Co. v. TIG Ins. Co.*, 934 F. Supp. 2d 594, 600 (S.D.N.Y. 2013) (quoting *Intercontinental Planning, Ltd. v. Daystrom, Inc.*, 24 N.Y.2d 372, 382 (N.Y. 1969)).

Here, the negotiation for all of the Product purchases occurred in New York. Plaintiff purchased the Products in New York and used them in New York. The exchange of promises and consideration took place in New York. Further, Mr. Bassett was domiciled in New York during the negotiation, purchase, and use of the Products. Consequently, the "center of gravity" for the contracts at issue is in New York, and the Court should use New York law to evaluate questions of contract formation and validity.

**B. THE COURT MUST DENY EA'S MOTION TO COMPEL ARBITRATION OF PLAINTIFF'S CLAIMS**

    **1. The Court Has Jurisdiction to Determine the Threshold Issue of Contract Formation and Whether There Was Agreement to Arbitrate**

"The threshold question facing any court considering a motion to compel arbitration is. . . whether the parties have agreed to arbitrate." *Schnabel*, 697 F.3d at 118; *see also JLM Indus., Inc. v. Stolt-Nielsen SA*, 387 F.3d 163, 169 (2d Cir. 2004); *Samson v. NAMA Holdings, LLC*, 637 F.3d 915, 923 (9th Cir. 2010); *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 756 (9th Cir. 1988). "A dispute is arbitrable only if the parties contractually bind themselves to arbitrate it." *Telenor Mobile Commc'n v. Storm LLC*, 584 F.3d 396, 405–06 (2d Cir. 2009) (citing *AT&T Tech., Inc. v. Commc'n Workers of Am.*, 475 U.S. 643, 648 (1986)). Under *AT&T Tech.*, the Supreme Court has made clear that "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute he has not agreed so to submit." *AT&T Tech.*, 475 U.S. at 648 (internal quotation omitted); *BG Grp., PLC v. Republic of Arg.*, 134 S. Ct. 1198, 1206 (2013); *Bonnant v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 467 Fed. Appx. 4, 7 (2d Cir. 2012); *Samson*, 637 F.3d at 923; *Ingle v. Circuit City Stores, Inc.*, 328 F.3d 1165, 1179 (9th Cir. 2003).[1] Thus, arbitration "is a matter of consent, not coercion." *JLM*, 387 F.3d at 171 (quoting *Volt Info. Scis. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 479 (1989)); *Ingle*, 328 F.3d at 1179.

---

[1] While Plaintiff disagrees with Defendant that California case law is applicable here, Plaintiff cites California law in addition to New York law because the result is the same under either law – *i.e.* denial of Defendant's Motion in its entirety.

"It is well settled in both commercial and labor cases that whether parties have agreed to submit a particular dispute to arbitration is typically an issue for judicial determination." *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2855 (2010) (internal quotation marks and citations omitted); *Kramer v. Toyota Motor Corp.*, 705 F.3d 1122, 1127 (9th Cir. 2013); *see Dedon GmbH v. Janus et Cie*, 411 Fed. Appx. 361, 363 (2d Cir. 2011). "It is equally well settled that where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock*, 130 S. Ct. at 2855–56; *Kramer*, 705 F.3d at 1127. The Supreme Court has held that "courts should order arbitration of a dispute *only* where the court is satisfied that neither the formation of the parties' arbitration agreement *nor* (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue." *Granite Rock*, 130 S. Ct. at 2857–58 (emphasis added). "Where a party contests either or both matters, 'the court' must resolve the disagreement." *Id.*

Mr. Bassett challenges both the formation of the so-called "second contract" as a whole and the formation of the arbitration clause in particular. Further, Mr. Bassett contends the arbitration clause is unenforceable because it is unconscionable. Accordingly, the enforceability of the arbitration clause is an issue for the Court to decide.

## 2. The Arbitration Clause Is Unenforceable, as the TOS Were Not Incorporated into Any Contract

EA maintains that the TOS were incorporated into a contract with Mr. Bassett in one (or both) of the following instances: (1) the reference to the TOS and EA website on the back of the Products' packaging incorporated the TOS into a first contract (the "first contract"); or (2) the TOS were incorporated into a second contract when Mr. Bassett clicked "accept" prior to accessing online play (the "second contract"). EA's arguments are wrong. As detailed below, the arbitration clause is unenforceable, as the TOS were not incorporated in either instance.

"Whether or not the parties have agreed to arbitrate is a question of state contract law." *Schnabel*, 697 F.3d at 119; *see Specht v. Netscape Commc'n Corp.*, 306 F.3d 17, 27 (2d Cir. 2002); *Samson*, 637 F.3d at 924 (9th Cir. 2010). To form a valid contract, there must be an offer, acceptance, consideration, mutual assent, and intent to be bound. *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004) (internal quotation omitted); *Different Drummer LLC v. Nat'l Urban League, Inc.*, No.. 11 CIV. 4982 KBF, 2012 WL 406907, at *4 (S.D.N.Y. Feb. 7, 2012); *see also Duncan v. Wells Fargo Home Mortg., Inc.*, 487 Fed. Appx. 427, 427 (9th Cir. 2012) ("Basic contract principles require, for an enforceable contract, an offer and acceptance, meeting of the minds, and consideration.") (internal citation omitted).

Here, a contract was formed upon the sale of the Products by the store to Mr. Bassett. Under both New York and California law, "an offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances." N.Y. U.C.C. Law § 2-206(1)(a); Cal. Com. Code § 2206. The retail stores held out to the general public that the Products were available for purchase by any consumer. Mr. Bassett accepted that offer and exchanged money in consideration for the Products. Both parties intended for Mr. Bassett to permanently retain the Products and for the store to permanently retain the money. The terms of the particular contract consisted of those terms that were valid at the time of mutual performance. N.Y. U.C.C. Law § 2-207(3); Cal. Com. Code § 2207(3). Thus, upon completion of the transaction, the four corners of the contract were established.

As detailed below, the reference to the TOS and EA's website on the back of the Products' packaging is insufficient for incorporation of the TOS. Furthermore, Defendant's second contract theory rests on past consideration, which is invalid. In addition, the arbitration clause is unenforceable because it is illusory, as it stripped Mr. Bassett of his statutory rights.

### a. The TOS were not incorporated by mention of the TOS and website on the packaging

EA argues the TOS were incorporated into the first contract by their mere mention along with EA's website on the Products' packaging. Def. Mem. at 12–13. Defendant is wrong.

The Second Circuit's decision in *Schnabel v. Trilgiant Corp.* is on point. In *Schnabel*, the Second Circuit upheld the decision to deny a motion to compel arbitration. 697 F.3d at 110 ("We conclude that despite some limited availability of the arbitration provision to the plaintiffs, they are not bound to arbitrate this dispute."). Following the Second Circuit's decision in *Schnabel*, this Court also should deny Defendant's Motion.

In *Schnabel*, the TOS were included in an email sent to the plaintiffs following their purchase. *Id.* The Second Circuit stated, "'[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and *knows or has reason to know* that the other party may infer from his conduct he assents." *Id.* at 120 (internal citation omitted) (emphasis added). The court concluded that in order to assent, the party must be on notice of the terms. *Id.* at 120; *see also Hines v. Overstock.com, Inc.*, 380 Fed. Appx. 22, 25 (2d Cir. 2010); *Douglas v. U.S. Dist. Ct. for Dist. of Cal.*, 495 F.3d 1062, 1066 (9th Cir. 2007) ("[A]n offeree cannot actually assent to an offer unless he knows of its existence[.]" (internal citation omitted)). In defining this notice, the court stated "[a]n offeree, regardless of apparent manifestation of consent, is not bound by inconspicuous contractual provisions of which he is unaware, contained in a document whose contractual nature is not obvious." *Schnabel*, 697 F.3d at 123. In distinguishing the type of cases relied upon by Defendant here, the court stated:

By contrast, the arbitration provision here was both temporally and spatially decoupled from the plaintiffs' enrollment in and use of [the product]; the term was delivered after initial enrollment and [the product] members such as the plaintiffs would not be forced to confront the terms while enrolling in or using the service or maintaining their memberships. In this way, the transmission of the arbitration provision lacks a critical element of shrinkwrap contracting—the connection of the terms to the goods (in this case the services) to which they apply.

*Id.* at 127.[2]

As in *Schnabel*, here the TOS were decoupled both temporally and spatially from the packaging. The passing reference to the TOS and website on the back of the packaging in extremely small font did not force Mr. Bassett to read and agree or otherwise consent to the terms prior to purchasing the Products. Indeed, Mr. Bassett was capable of using the Products without ever being confronted with the TOS. The passing reference to the TOS and website was inconspicuous, and their contractual nature was not obvious.

---

[2] EA points to *Hill v. Gateway 2000, Inc.*, 105 F.3d 1148 (7th Cir. 1996), to support its argument. First, the Second Circuit decision in *Schnabel*, and not the Seventh Circuit in *Hill*, is governing authority here. Furthermore, in *Hill*, unlike here, the full TOS were included in the box that contained the computer the plaintiff purchased. *Hill*, 105 F.3d at 1148. Thus, upon opening the box, the plaintiff was confronted with the full TOS and given the option to agree to them or return the computer within 30 days for a refund. *Id.* The same was true in the case of *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996), also relied upon by Defendant. As explained in *Hill*, "*ProCD*…holds that terms inside a box of software bind consumers who use the software after an opportunity to read the terms and to reject them by returning the product." *Hill*, 105 F.3d at 1148. That fact pattern simply does not exist here. The arbitration provision was not inside the box; indeed, it did not exist for most of the purchases. Moreover, here, consumers had no opportunity to return the Products to Defendant for a full refund, unlike in *Hill* and *ProCD* where the consumers could get their money back if they did not agree with the terms.

The lack of notice was compounded by the fact that, once Mr. Bassett took the Products home, he could not return them for a refund.[3] This further distinguishes this action from the cases relied upon by Defendant for its argument. *See, e.g.*, *Pro-CD*, 86 F.3d at 1453; *Hill*, 105 F.3d at 1148. In such cases, it was critical to incorporation of the TOS in the sale contract that buyers had a meaningful chance to make a final decision after a detailed review of the TOS and return the product for a refund if they did not agree to the terms. *ProCd*, 86 F.3d at 1453. Here, the TOS were not included within the Products' packaging, and Plaintiff had no opportunity to return the Products for a refund at the time he attempted to access online play.

For the reasons stated above, Mr. Bassett was not put on notice of, and, thus, did not assent to, the TOS supplied on EA's website. Because he did not assent to the TOS, the TOS were not incorporated into the first contract. Accordingly, there was no agreement to arbitrate. Therefore, Defendant's Motion to Compel Arbitration based on the TOS and website referenced on the packaging should be denied.

> **b.** **Even if the TOS and website were somehow incorporated into the first contract, the arbitration clause is unenforceable because it is illusory**

Even if the Court were to find that the TOS were incorporated into the "first contract" (which it should not for the reasons stated above), the arbitration clause in EA's TOS is illusory, and, consequently, there was no agreement to arbitrate. "An illusory promise, 'that is, a promise merely in form, but in actuality not promising anything . . . cannot serve as consideration.'"

---

[3] There is no provision in the TOS providing for a refund if a consumer does not agree to the TOS, and EA has not suggested Plaintiff had any right to return the Products at any later date. Rather the sole remedy against EA is cancelation of the consumer's account, which means the consumer cannot use the game for online play—thereby defeating the purpose the consumer paid money for the game in the first place.

*Damato v. Time Warner Cable, Inc.*, No. 13-cv-994 (ARR)(RML), 2013 WL 3968765, at *5 (E.D.N.Y. July 31, 2013); *see also Asmus Pac. Bell,* 96 Cal. Rptr. 2d 179, 188 (Cal. 2000); *Pease v. Brown*, 186 Cal. App. 2d 425, 431 (Cal. Dist. Ct. App. 1960). "Where a promisor retains an unlimited right to decide later the nature or extent of his performance, the promise is too indefinite for legal enforcement." *Blair v. Scott Specialty Gases*, 283 F.3d 595, 604 (3rd Cir. 2002) (quoting *Floss v. Ryan's Family Steak House, Inc.*, 211 F.3d 306 (6th. Cir. 2000)); 1 SAMUEL WILLISTON CONTRACTS § 43, at 140 (3d ed. 1957). Thus, if a promise is illusory, there was no consideration, and the agreement is unenforceable.

Where a party has unilateral authority to modify the terms of an arbitration agreement without the other party's consent and with little or no notice, the arbitration agreement is illusory. *See Blair*, 283 F.3d at 604 (citing *Floss*, 211 F.3d at 315); *Day v. Fortune Hi-Tech Mktg., Inc.*, 536 Fed. Appx. 600, 604 (6th Cir. 2013) (finding an arbitration provision which allowed the drafter to modify at any time made the promise illusory and the contract void for lack of consideration)); *Perez v. Hospitality Ventures-Denver LLC*, 245 F. Supp. 2d 1172, 1175 (D. Colo. 2003) (finding the ability to modify the terms of an arbitration agreement unilateral rather than mutual and therefore illusory); *Dumais v. Am. Golf Corp.*, 150 F. Supp. 2d 1182, 1193–94 (D.N.M. 2001) (finding an arbitration agreement that allowed the drafter to unilaterally modify to be illusory); *Trumbull v. Century Mktg. Corp.*, 12 F. Supp. 2d 683, 686 (N.D. Ohio) (finding an employment contract that allowed for unilateral modification by the employer to be illusory, including the arbitration clause).

EA's unilateral ability to modify the entire agreement renders the arbitration provision unenforceable. Paragraph 3 of the opening page of the TOS states, "EA may modify the Terms of Service at any time." Windrem Decl., Ex. 11, at ¶ 3. This sentence gives EA, and only EA, the right to unilaterally change any portion of the TOS at any time it desires. Thus, EA could change any element, including the arbitration provision, at will.

Paragraph 3 goes on to state, "[r]evisions to terms affecting existing EA Services shall be effective thirty (30) days after posting at **terms.ea.com**." *Id.* If one visits terms.ea.com, the previous versions are not available. Rather, they are replaced by the newest version. Thus, EA is suggesting that in order to determine what revisions have been made to prior terms, Mr. Bassett is required to compare the older 14 page version of the TOS, which is now unavailable, with the newer 18 page version of the TOS in order to determine what changes EA made to the agreement to arbitrate. *Id.*; Windrem Decl., Ex. 12. Further, if Mr. Bassett found the arbitration agreement objectionable, there was no means or mechanism for rejecting the changes.

Accordingly, Paragraph 3 gives EA the right to change the agreement to arbitrate at any time it desires. It is only required to provide notice of the change in an obscure portion of its website and does so in an obfuscated manner. Mr. Bassett had no means for rejecting any changes. Therefore, EA retained an unlimited right to decide later the nature and extent of its agreement to arbitrate. Its promise was illusory, and, thus, there was no consideration.

Furthermore, EA's authority to unilaterally modify the arbitration provision of the TOS renders the arbitration agreement unenforceable. Part G of the Dispute Resolution section states,

> Notwithstanding any provision in this Agreement to the contrary, we agree that if EA makes any future changes to this arbitration provision (other than a change to the Notice Address), you may reject any such change by sending us written notice within 30 days of the change to the Arbitration Notice address provided above. By rejecting any future change, you are agreeing that you will arbitrate any dispute between us in accordance with the language of this provision.

14

Windrem Decl., Ex. 11, at § 20(G).

Part G gives EA alone the right to modify the terms of the arbitration provision unilaterally and at any time. Thus, the provision vests the power to make changes solely with EA, not mutually with both parties. *Id.* (emphasis added).

In addition, Part G references notice, but the obligation is on Mr. Bassett to provide notice to EA of a rejection to a modification of the arbitration provision. There is no requirement that EA provide notice of a modification to Mr. Bassett. Thus, under Part G, as written, EA is not required to give any notice of any change.

Even giving EA the benefit of the doubt and reading Part G in conjunction with the paragraph allowing for modification of all the terms, Mr. Bassett was only given notice of a change to the terms by their posting on an obscure portion of the EA website. Windrem Decl., Ex. 11, at ¶ 3. Further, the changes were not highlighted or in any way set apart for Mr. Bassett to identify them. Rather, as discussed above, EA simply replaced the old version with the new on the website. This purposeful obfuscation of the changes made any so-called "notice" meaningless.

Finally, if the Court accepts EA's argument that the TOS apply retroactively, then EA retained the ability to change the terms of the arbitration provision after an action was already pending. Following the 30-day waiting period, the retroactivity would apply the new terms to the pending action. Under this logic, while an action is before the arbitrator, EA could change any term of the arbitration clause, wait 30 days, and the retroactive nature of those terms would then be enforceable in the pending action.

Paragraph 3 and Part G unequivocally allow EA to unilaterally change the arbitration agreement at any time, including during a pending action, and EA was not required to provide notice (or, at most, it was required to provide detached, obfuscated, and meaningless "notice"). EA retained an unlimited right to decide later the nature or extent of its promise to arbitrate. As such, its promise to arbitrate was illusory and not legally enforceable. Since the arbitration agreement is not legally enforceable, there is no agreement to arbitrate. Without an agreement to arbitrate, the Court should deny Defendant's Motion to Compel Arbitration.

### c. The TOS were not binding by virtue of a second contract

EA next argues that the arbitration clause was incorporated through a click-through process in a second contract when Mr. Bassett clicked "I Accept" prior to accessing the online play. Def. Mem. at 10. In its Memorandum, EA places all of its emphasis upon whether clicking "I Accept" constituted assent. However, EA fails to acknowledge that contract formation requires more than assent.

EA readily admits that access to the online play feature should be evaluated as a potential separate contract from the contract associated with the purchase of the Products. Def. Mem. at 15 ("Plaintiff entered into a *new contract* on September 27, 2011 and again on November 21, 2013 when he activated the online features for *FIFA 12* and *FIFA 13*, respectively" (emphasis added)). As discussed above in Part B.2.a, because the TOS were not incorporated in the first contract, they are not part of the contract at issue. *AT&T Tech.*, 475 U.S. at 648. Moreover, even if the Court were to accept Defendant's "two contract" theory, the second contract is unenforceable, and, as a result, the agreement to arbitrate in the second contract is unenforceable.

<u>The second contract is unenforceable because EA's promises were illusory</u>

EA alleges Mr. Bassett agreed to the TOS by clicking "I Accept" prior to accessing the online feature of the Products. These TOS were the same as those found at terms.ea.com (the website provided on the back of the Products' packaging). As such, the TOS related to arbitration are illusory for the same reasons discussed above. *See, supra*, Part B.2.b. As the terms related to arbitration are illusory, there was no valid agreement to arbitrate, and Defendant's Motion to Compel Arbitration should be denied.

(ii) <u>The arbitration clause in the second contract is unenforceable, as it strips Mr. Bassett of his statutory remedies</u>

Several sections of the TOS, in the second contract, act together as a prospective waiver of Mr. Bassett's right to pursue statutory remedies. As such, these sections are collectively unenforceable.

The Supreme Court has established the "effective vindication" doctrine for dispute resolution clauses in contracts. *Am. Express Co. v. Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013); *Mitsubishi Motors Corp.*, *v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, n.19 (1985). Under this doctrine, a dispute resolution clause is invalidated if it acts "as a prospective waiver of a party's *right to pursue* statutory remedies." *Italian Colors*, 133 S. Ct. at 2310 (quoting *Mitsubishi Motors*, 473 U.S. at n.19). The Court specified that the effective vindication doctrine "would certainly cover a provision in an arbitration agreement forbidding the assertion of certain statutory rights." *Id.* In explaining the purpose of the doctrine, the Court stated, "[w]ithout it, companies have every incentive to draft their agreements to extract backdoor waivers of statutory rights, making arbitration unavailable or pointless." *Id.* at 2315.

This principle extends to state statutory rights. *Lau v. Mercedes-Benz USA, LLC*, No. CV 11-1940 MEJ, 2012 WL 370557, at *10 (N.D. Cal. 2012) (holding that arbitration clause that prevented damages under state law was not preempted by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and was unenforceable); *Indep. Ass'n of Mailbox Ctr. Owners, Inc. v. Super. Ct.*, 133 Cal. App. 4th 396, 412–13 (Cal. Ct. App. 2005) (clause limiting punitive, consequential, or incidental damages, or attorney's fees and/or costs deprived plaintiffs of statutory rights and were unenforceable); *Booker v. Robert Half Int., Inc.*, 413 F.3d 77, 83 (D.C. Cir. 2005) (J. Roberts) (upholding a district court decision that a bar on punitive damages was unenforceable).

In the section titled "Cancellation of your Account," EA's TOS state, "You understand and agree that the cancellation of your Account or a particular subscription is your sole right and remedy with respect to any dispute with EA . . . ." Windrem Decl., Ex. 11, at § 10. Further, in the section titled "Limitations on Warranty and Liability," it states, "your sole and exclusive remedy for any dispute with EA or its licensors arising out of or relating to EA services and/or EA products is to stop using EA services, and to cancel your account." Windrem Decl., Ex. 11, at § 16.

The restriction to cancellation of an account as the sole remedy in case of a dispute prevents Mr. Bassett from pursuing his statutory remedies for actual damages, treble damages, and attorney's fees under New York General Business Law section 349(h). It also prevents Mr. Bassett from pursuing his statutory remedies for damages under California Business & Professions Code sections 17203, 17206, and 17500, as well as California Civil Code section 1750.

In addition, the Limitation section limits EA's liability to the amount paid for EA services. Windrem Decl., Ex 11, at § 16. This limited Mr. Bassett's right to pursue treble damages and attorney's fees under New York General Business Law section 349(h). The Limitation section goes further by prohibiting the award of incidental or consequential damages. *Id.* This limited Mr. Bassett's right to pursue punitive, incidental, and consequential damages, as well as attorney's fees under California Business and Professions Code section 17200 *et seq.* (the "UCL"). *Indep. Ass'n of Mailbox Ctr. Owners, Inc.*, 133 Cal. App. 4th at 412–13 (finding an arbitration clause unconscionable where it limited arbitrators' authority to provide punitive, consequential, and incidental damages, as well as attorney's fees, under the UCL).

These limitations differ from those in *Italian Colors*, in which the Supreme Court determined that a class action waiver simply limited the number of parties that could pursue a statutory remedy in a single action. The class action waiver in *Italian Colors* had the effect of making an action economically untenable, but it did not eliminate a statutory remedy. The Court stated, "the fact that it is not worth the expense involved in *proving* a statutory remedy does not constitute the elimination of the *right to pursue* that remedy." *Italian Colors*, 133 S. Ct. at 2311. The Cancellation and Limitation sections go beyond the class action waiver in *Italian Colors*. Here, they eliminate Mr. Bassett's right to pursue punitive, incidental, and consequential damages, as well as attorney's fees.

Although these limitations on remedies were not contained specifically within the dispute resolution clause, this was only a drafting convenience. It would run counter to logic to allow EA to circumvent the effective vindication doctrine by sprinkling its statutory limitations throughout the contract. As Mr. Bassett's remedies are limited under the Cancellation and Limitation sections, which work in conjunction with the Dispute Resolution section and were

separated only due to drafting convenience, the effective vindication doctrine invalidates all of these sections collectively. Since the doctrine invalidates the Dispute Resolution section, it also invalidates the agreement to arbitrate. Because there is no valid agreement to arbitrate, the Court should deny Defendant's Motion to Compel Arbitration.

(iii)   <u>The second contract is unenforceable because access to online play constituted past consideration</u>

As previously stated, the requirements for a valid contract are: offer, acceptance, *consideration*, mutual assent, and intent. *Different Drummer*, 2012 WL 406907, at *4; *Duncan*, 487 Fed. Appx. at 427. "A promise without consideration is, of course, not a contract but simply a promise." *Ellig v. Moina*, No. 12 Civ. 7927(KBF), 2014 WL 521210, at *5 (S.D.N.Y. Feb. 10, 2014); *see Startech, Inc. v. VAS Arts*, 126 F. Supp. 2d 234, 236 (S.D.N.Y. 2000). The mere performance of an act that EA was already obligated to perform **cannot** constitute consideration. *James A. Haggerty Lumber & Mill Work, Inc. v. Thompson Starrett Const. Co.*, 256 N.Y.S.2d 1011, 1012–13 (N.Y. App. Div. 1965); *Ferguson v. Lion Holdings, Inc.*, 312 F. Supp. 2d 484, 494 (S.D.N.Y. 2004); *Int. Paper Co. v. Suwyn*, 951 F. Supp. 445, 448 (S.D.N.Y. 1997); *Van Brunt v. Rauschenberg*, 799 F. Supp. 1467, 1471 (S.D.N.Y. 1992); *see also In re Ins. Installment Fee Cases*, 211 Cal. App. 4th 1395, 1415 (Cal. Ct. App. 2012) ("[P]ast consideration given for a promise under an existing contract cannot support a separate promise in excess of the promisor's existing contractual obligations."); *Passante v. McWilliam*, 53 Cal. App. 4th 1240, 1247 (Cal. Ct. App. 1997) ("Past consideration cannot support a contract.").

Here, EA was obligated under the first contract to provide online access to Product users. The contract for sale was completed upon the exchange of money for the game. *See, supra*, Part B.2. The entirety of the contract is based on the terms as they existed at the time of purchase, including the representations made on the box that the game could be played online. Thus, these

20

representations made access to online play part of the initial bargain. As such, access to online play was an essential element of the original contract.

Consequently, at the time Plaintiff electronically checked the "I Accept" box in his home when attempting to access the online play feature of the Products he had purchased, EA already had a preexisting duty to provide him access to online play. EA used the electronic game flow within the Products that included the "I Accept" checkbox to prevent Plaintiff from accessing the online features that EA had a preexisting duty to provide. As such, access to online play cannot be the consideration on which any purported second contract rests, rendering any potential second contract unenforceable, including the TOS and arbitration provision contained within it. Thus, there is no valid agreement to arbitrate, and the Court should deny Defendant's Motion to Compel Arbitration.

### d.    In the alternative, the TOS were not incorporated into the second contract because there was no modification of the first contract

If the Court finds that EA's presentation of the TOS at the initiation of online play was not the creation of a second contract but a modification of the first, the attempted modification is unenforceable and only the original terms of the first contract (*i.e.*, the promises made on the packaging) stand.

The TOS were not incorporated into the contract by their inclusion prior to accessing the online play feature. "[F]undamental to the establishment of a contract modification is proof of each element requisite to the formulation of a contract, including mutual assent to its terms." *Kulig*, 2013 WL 6017444, at *6. A contract modification must be done in good faith. N.Y. U.C.C. Law § 2-209(1) cmt. 2; *Erie Cnty. Water Auth. v. Her-Gar Constr. Corp.*, 473 F. Supp. 1310, 1313 (W.D.N.Y. 1979); Cal. Com. Code § 2209 cmt. 3 ("Section 2209 does not free one to extort additional consideration by refusing in bad faith to carry out [the] original commitment.").

An extorted modification violates the good faith requirement. N.Y. U.C.C. Law § 2-209(1) cmt. 2; Cal. Com. Code § 2209 cmt. 3.

Here, EA concedes that Mr. Bassett was prevented from accessing the online feature without first agreeing to the TOS. Def. Mem. at 12–13. EA used its gatekeeper authority to force Mr. Bassett to agree to a modification. If a car dealership sold Mr. Bassett a car, they could not force him to modify the contract to access the trunk. Since EA was extorting Mr. Bassett to agree to the modification, the modification was not done in good faith and, thus, is unenforceable. As such, the agreement to arbitrate contained in the TOS is unenforceable. EA should be held to the terms of the original contract, as found on the packaging. Because the terms found on the packaging do not contain an arbitration clause, there is no valid agreement to arbitrate, and Defendant's Motion to Compel Arbitration should be denied.

### 3. The Arbitration Clause Is Unenforceable Because It Is Unconscionable

If the court finds that the TOS is part of a contract that the parties formed, the delegation of arbitration is nonetheless unenforceable because it is unconscionable.

The Supreme Court has stated that arbitration is a matter of contract, and arbitration agreements are on equal footing with other contracts. *Rent-A-Center, West, Inc. v. Jackson*, 130 S. Ct. 2772, 2776 (2010). "Like other contracts . . . they may be invalidated by 'generally applicable contract defenses, such as fraud, duress, or unconscionability.'" *Id.* (quoting *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)).

In both New York and California, an arbitration agreement is unenforceable if it is both procedurally and substantively unconscionable.[4] *NML Capital v. Republic of Arg.*, 621 F.3d 230, 237 (2d Cir. 2010) (quoting *Gillman v. Chase Manhattan Bank, N.A.*, 73 N.Y.2d 1, 10 (N.Y. 1988)); *Hameed v. IHOP Franchising LLC*, 520 Fed. Appx. 520, 522 (9th Cir. 2013). "Procedural and substantive unconscionability operate on a sliding scale; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *Hojnowski v. Buffalo Bills, Inc.*, No. 13-cv-388S, 2014 WL 408717, at *4 (W.D.N.Y. Feb. 3, 2014) (quoting *Gillman*, 73 N.Y.2d at 10); *see also Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1004 (9th Cir. 2010)).

### a.    The arbitration clause is procedurally unconscionable

Under both New York and California law, the TOS is procedurally unconscionable. In New York, "[p]rocedural unconscionability is analyzed by considering a number of factors, including: (1) the size and setting of the transaction; (2) whether deceptive or high pressured tactics were used; (3) the use of fine print; (4) the experience and education of the party claiming unconscionability, and (5) whether there was a disparity in bargaining power." *Metro. Prop. & Cas. Ins. Co. v. Budd Morgan Cent. Station Alarm Co.*, 95 F. Supp. 2d 118, 121 (E.D.N.Y. 2000); *Gillman*, 73 N.Y.2d at 11; *Sablosky v. Edward S. Gordon Co.*, 73 N.Y.2d 133, 138 (N.Y. 1989); *Bar-Ayal v. Time Warner Cable, Inc.*, 2006 WL 2990032, No. 03 CV 9905(KMW), at *15 (S.D.N.Y. 2006).

---

[4] As stated above, while Plaintiff disagrees with Defendant that California case law is applicable here, Plaintiff cites California law in addition to New York law because the result is the same under either law—*i.e.*, denial of Defendant's Motion in its entirety.

Here, Mr. Bassett is an individual natural person. EA is a major corporation, traded on the NASDAQ. In 2013, EA made $3.797 billion in net revenue.[5] Thus, EA had far greater bargaining power than Mr. Bassett.

By the time he tried to access the Product's online play feature, Mr. Bassett had already purchased the game and could not return it. As such, EA effectively forced him to agree to the TOS. He could not have chosen to use a competitor's online network, as the Products were only compatible with EA's network. Further, EA's competitors cannot provide games that are truly comparable to EA's games, as EA had exclusive licensing agreements with the Fédération Internationale de Football Association ("FIFA"), National Football League ("NFL"), Professional Golfers Association ("PGA"), and the American Hockey League ("AHL").[6] Thus, Mr. Bassett lacked any meaningful choice. Either he clicked the "I Accept" button, or he did not get the benefit of his bargain. He had no third option.

In addition, Mr. Bassett was not allowed to access the online features of the game without clicking the button. Def. Mem. at 11. For certain Products, the arbitration provision did not appear until later versions of the TOS. Windrem Decl., Exs. 14, 15. In these instances, his

---

[5] Electronic Arts In. Fiscal Year 2013 Proxy Statement and Annual Report, 26, *available at* http://files.shareholder.com/downloads/ERTS/3085163671x0x671716/B89EEE77-BFBD-446D-AC7D-8D98F64C5BAE/510163_002_Electronic_Arts_BMK.PDF (2013).

[6] EA, http://investor.ea.com/releasedetail.cfm?releaseid=762885 (last visited Apr. 30, 2014); Kahlil Thomas, *EA Sports NFL License: CEO Andrew Wilson Says That Company 'Has Agreements in Place' For Future Madden Games*, INTERNATIONAL DIGITAL TIMES, Jan. 29, 2014, *available at* http://www.idigitaltimes.com/articles/21686/20140129/ea-sports-nfl-license-ceo-andrew-wilson.htm; Daemon Hatfield, *PGA Tour, EA Renew Partnership*, IGN, Aug. 2, 2006, *available at* http://www.ign.com/articles/2006/08/02/pga-tour-ea-renew-partnership; *AHL, EA Sports announce 4-year extension*, NHL, *available at* http://www.nhl.com/ice/news.htm?id=530891.

access was cut off until he agreed to arbitrate all disputes. Mr. Bassett was not allowed to negotiate the arbitration provision. It appeared in a take-it-or-leave-it format. EA was able to hold hostage his access to the online feature until he clicked the button that Defendant claims shows he agreed to arbitrate all disputes. Thus, EA used high pressure tactics to obtain Mr. Bassett's agreement.

The Dispute Resolution section was buried on page 13 of an 18-page set of terms. The arbitration provision was further buried in the 8th paragraph of a 16-paragraph Dispute Resolution section. Thus, EA buried the arbitration provision in the midst of fine print. The disparity in bargaining power, the high pressure tactics, and the fact that the arbitration provision was buried in fine print makes the arbitration provision procedurally unconscionable under New York law.

In California, "[p]rocedural unconscionability 'involves "oppression" or "surprise" due to unequal bargaining power." *Bridge Fund*, 622 F.3d at 1004; *Newton v. Am. Debt. Serv., Inc.*, No. 12-15549, 2013 WL 6501391, at *1 (9th Cir. 2013); *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1093 (9th Cir. 2009). "A contract is procedurally unconscionable if it is a contract of adhesion, *i.e.*, a standardized contract, drafted by the party of superior bargaining strength, that relegates to the subscribing party only the opportunity to adhere to the contract or reject it." *Ting v. AT&T*, 319 F.3d 1126, 1148 (9th Cir. 2003); *see Newton*, 2013 WL 6501391 at *1.

As discussed above, the arbitration provision was drafted by EA. Mr. Bassett was not allowed to access online play without clicking the button that Defendant claims shows agreement to arbitrate his disputes. Part G of the Dispute Resolution section allowed *only* EA to modify the arbitration provision, thus Mr. Bassett was not allowed to negotiate the delegation prior to accepting or rejecting it. Windrem Decl., Ex. 11, at § 20(G). The arbitration provision was

25

provided on a take-it-or-leave-it basis. Thus, the arbitration provision was a contract of adhesion and was procedurally unconscionable under California law.

### b.    The arbitration clause is substantively unconscionable

"Because . . . the arbitration provision is suffused with a high degree of procedural unconscionability, only a moderate finding of substantive unconscionability is required to render the arbitration provision unconscionable." *Merkin v. Vonage Am. Inc.*, No. 2:13-CV-08026-CAS, 2014 WL 457942, at *9 (C.D. Cal. Feb. 3, 2014); *accord Armendariz v. Found. Health Psychcare Serv., Inc.*, 24 Cal. 4th 83, 99 (Cal. 2000). "Substantive unconscionability requires looking at the substance of the bargain and deciding whether the 'terms were unreasonably favorable to the party against whom unconscionability is urged.'" *Metro. Prop.*, 95 F. Supp. at 121; *see Ting*, 319 F.3d at 1149 ("Substantive unconscionability focuses on the one-sidedness of the contract terms."); *Armendariz*, 24 Cal. 4th at 115. Here, the delegation of arbitration is substantively unconscionable for three reasons: (1) EA's ability to unilaterally modify the delegation at-will is unreasonably favorable to EA; (2) EA's carve out from the mandatory arbitration clause those cases it would likely initiate is unreasonably favorable to EA; and (3) EA's limitations on Mr. Bassett's statutory remedies was unreasonably favorable to EA.

### (i)    EA's authority to unilaterally modify the arbitration clause makes it substantively unconscionable

Arbitration clauses that allow one party to unilaterally modify the clause at any time, with only minimal notice, are substantively unconscionable. *Ramsdell v. Lenscrafters, Inc.*, 135 Fed. Appx. 130, 131 (9th Cir. 2005); *Ingle*, 328 F.3d at 1179; *Montes v. San Joaquin Cmty. Hosp.*, No. 1:13-cv-01722-AWI-JLT, 2014 WL 334912, at *14 (E.D. Cal. Jan. 29, 2014); *Steele v. Am. Mortg. Mgmt. Serv.*, No. 2:12-cv-00085 WBS JFM, 2012 WL 5349511, at *7 (E.D. Cal. Oct. 26, 2012); *Brennan v. Bally Total Fitness*, 198 F. Supp. 2d 377, 384 & n.11 (S.D.N.Y 2002); *cf.*

*Issacs v. OCE Bus. Serv., Inc.*, No. 13 Civ. 0548(JGK), 2013 WL 4744807, at *6 (S.D.N.Y. Sept. 4, 2013).

As discussed above, Part G of the Dispute Resolution section gives EA the right to modify the terms of the arbitration provision unilaterally and at any time without notice, or at best, detached and obfuscated notice. Windrem Decl., Ex. 11, at § 20(G). Finally, under EA's retroactivity theory, EA would be allowed to change the terms of during an existing action.

Part G allows EA to unilaterally modify the arbitration provision at any time, and EA was not required to provide notice (or, at most, it was required to provide detached and obfuscated "notice"). This broad authority to modify the arbitration provision was unreasonably favorable to EA, thus making the arbitration provision substantively unconscionable.

Since the delegation of arbitration is both substantively and procedurally unconscionable, it is unenforceable. As such, the Court should deny Defendant's Motion to Compel Arbitration.

(ii)     <u>EA's carve outs of the arbitration clause render it substantively unconscionable</u>

Courts in various jurisdictions have found that arbitration clauses that create the appearance of mutuality of obligation to arbitrate, but in truth, only require the weaker party to arbitrate are substantively unconscionable. *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 169–71 (5th Cir. 2004) (upholding district court's ruling that an arbitration agreement was unconscionable where claims consumers were likely to make had to be arbitrated while cellular provider's claims could go to court); *E-Z Cash Advance, Inc. v. Harris*, 60 S.W. 3d 436, 441 (Ark. 2001) ("There is no mutuality of obligation where one party uses an arbitration agreement to shield itself from litigation, while reserving to itself the ability to pursue relief through the court system."); *Independence Cnty. V. City of Clarksville*, 386 S.W.3d 395, 399–400 (Ark. 2012) ("[T]his court has consistently held that, where one party retains to itself the

right to seek judicial relief, while the other party is strictly limited to arbitration, there is no mutuality of obligation."); *Wis. Auto Title Loans, Inc. v. Jones*, 714 N.W.2d 155, 172–74 (Wis. 2006) (finding an arbitration agreement that allowed the drafter to take certain claims to court, but forced all the claims of the consumer to arbitration was one-sided and thus unconscionable).[7] This issue is matter of first impression for this Court applying New York law.

The case of *Merkin v. Vonage America Inc.* is on point. In that case, the defendant

---

[7] *Palm Beach Motor Cars Ltd. v. Jeffries*, 885 So.2d 990, 992 (Fla. Dist. Ct. App. 2004) ("Where one party is bound to arbitration of its claims but the other is not, there can be substantive unconscionability."); *Iwen v. U.S. W. Direct, a Div. of U.S. W. Mktg. Res. Grp., Inc.*, 293 Mont. 512, 521–22 (Mont. 1999) (finding unconscionable an agreement where "the weaker bargaining party has no choice but to settle all claims arising out of the contract through final and binding arbitration, whereas the more powerful bargaining party and drafter has the unilateral right to settle a dispute for collection of fees pursuant to the agreement in a court of law"); *Taylor v. Butler*, 142 S.W.3d 277, 286 (Tenn. 2004) (finding unconscionable an arbitration agreement where the claims the dealer would bring were carved out but the claims the buyer would bring had to go to arbitration); *Rivera v. Am. Gen. Fin. Serv., Inc.*, 259 P.3d 803, 819 (N.M. 2011) ("American General's ability under the arbitration clause to seek judicial redress of its likeliest claims while forcing Rivera to arbitrate any claim she may have is unreasonably one-sided."); *Ingle*, 328 F.3d at 1773–74 ("By essentially only covering claims that employees would likely bring against Circuit City, this arbitration agreement's coverage would be substantively one-sided[.]"); *Ferguson v. Countrywide Credit Indus., Inc.*, 298 F.3d 778, 785 (9th Cir. 2002) ("We adopt the California appellate court's holding in *Mecuro*, that Countrywide's arbitration agreement was unfairly one-sided and therefore, substantively unconscionable because the agreement 'compels arbitration of the claims employees are most likely to bring against Countrywide . . . [but] exempts from arbitration the claims Countrywide is most likely to bring against its employees." (internal citation omitted)); *Steele*, 2012 WL 5349511, at *5 ("A provision which excludes injunctive relief for unfair competition and/or disclosure of trade secrets may be substantively unconscionable because the agreement 'compels arbitration of the claims employees are most likely to bring against [the employer] . . . [but] exempts from arbitration the claims [the employer] is most likely to bring against its employees.'" (internal citation omitted)); *Macias v. Excel Bldg. Serv., LLC.*, 767 F. Supp. 2d 1002, 1009–10 (N.D. Cal. 2011) (finding the arbitration clause to be substantively unconscionable because the practical effect of the agreement was to limit only claims brought by weaker party against the stronger); *Stirlen v. Supercuts, Inc.*, 51 Cal. App. 4th 1519, 1540–41 (Cal. Ct. App. 1997); *see Brown v. Genesis Healthcare Corp.*, 229 W.Va. 382, 393 (W.Va. 2012).

exempted from arbitration, *inter alia*, collection disputes, intellectual property disputes, and unauthorized use, theft, or piracy of service disputes. *Merkin*, 2014 WL 457942, at *10. The Central District of California found that "[a]lthough these exceptions purport to be bilateral, these are in fact precisely the disputes that are most likely to be brought by Vonage, and least likely to be brought by the subscriber." *Id.* Noting that "California courts routinely find such one-sided arbitration agreements to be substantively unconscionable," the court held that the arbitration provision lacked "the requisite 'modicum of bilaterality'" and held the provision to be both substantively and procedurally unconscionable. *Id.* at *10–11.

Here, the TOS require "claims arising out of or relating to any aspect of the relationship between us, whether based in contract, tort, statute, fraud, misrepresentation or any other legal theory" to go to arbitration. Windrem Decl., Ex. 11. However, the terms carve out from that delegation "a claim to enforce or protect, or concerning the validity of, any of your or EA's (or any of EA's licensors') intellectual property rights." *Id.* EA further carved out all cases involving "theft, piracy, or unauthorized use." *Id.* It strains credulity to imagine a situation in which EA steals, pirates, or uses without authorization the online access it provides to consumers or steals consumers' intellectual property. *Merkin*, 2014 WL 457942, at *10 ("[I]t is unlikely that any subscriber would assert a claim involving, for example, 'fraudulent or unauthorized use, theft, or piracy of service.'"). Even more absurd is the question of how EA could use without authorization the online network, when it is the administrator of the system. However, these are precisely the type of claims EA is likely to bring against Plaintiff or other consumers. Thus, EA has forced Mr. Bassett to delegate actions Mr. Bassett is likely to bring against it, but carved out actions it is likely to bring against Mr. Bassett, making the delegation unreasonably favorable to EA.

Because the delegation is unreasonably favorable to EA, the delegation of arbitration is substantively unconscionable. *Merkin*, 2014 WL 457942 (finding provision substantively unconscionable because it "purports to mutually bind both parties to arbitration, but instead acts to systematically grant [defendants] the forum of their choice"). As shown above, the delegation of arbitration is both substantively and procedurally unconscionable, meaning it is unenforceable. Consequently, there is no valid agreement to arbitrate, and Defendant's Motion to Compel Arbitration should be denied.

(iii) <u>EA's limitation on statutory remedies makes the arbitration clause substantively unconscionable</u>

The Cancellation and Limitation sections of the TOS combine with the Dispute Resolution section to make the arbitration clause substantively unconscionable.

The Cancellation and Limitation sections limit Mr. Bassett's remedies to cancellation of his account. Windrem Decl., Ex. 11, at § 10, §16. However, the limitation to cancellation is restricted only to Mr. Bassett, as it would be impossible for EA to cancel its online access while leaving Mr. Bassett's intact. This term is unreasonably favorable to EA.

Further, the Limitation section prevents Mr. Bassett from seeking punitive, incidental, and consequential damages, as well as attorney's fees. Windrem Decl., Ex 11, at § 16. However, this limitation is restricted solely to Mr. Bassett. Under the agreement, EA is free to seek any and all of these damages. This, too, is unreasonably favorable to EA. As discussed above, these limitations only were separated from the arbitration clause by convenience in drafting. Thus, they work as part of the arbitration clause and slant the overall unreasonableness of the arbitration clause. As these limitations do not apply to EA, they are unreasonably favorable to EA, and, thus, are substantively unconscionable. Because the delegation is both substantively and procedurally unconscionable, it is unenforceable. No valid agreement to

30

arbitrate exists, and the Defendant's Motion to Compel Arbitration should be denied.

### 4. EA Failed to Meet its Burden to Prove the Existence of the Agreement to Arbitrate

Before a court will stay a proceeding in order to compel arbitration, the party moving for the stay "must make a prima facie initial showing that an agreement to arbitrate existed." *Hines*, 380 Fed. Appx. at 24; *Different Drummer*, 2012 WL 406907, at n.4; *Cusimano v. Berita Realty, LLC*, 959 N.Y.S.2d 720, 721 (N.Y. App. Div. 2013); *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (Cal. 1996). The standard applied is similar to that applicable for a motion for summary judgment. *Hines*, 380 Fed. Appx. 24; *Ross Sinclair & Assoc. v. Premier Senior Living, LLC*, 2012 WL 2501115, No. 11-CV-5104 YGR, at *5 (N.D. Cal. June 27, 2012). EA failed to carry its burden of proof. Although EA discussed multiple terms of service with arbitration provisions, and provided multiple examples of terms of service in the exhibits to the Windrem Declaration, EA never pointed to the specific TOS and the specific arbitration provision that it is invoking. Rather, EA simply made passing reference to multiple terms of service that Mr. Bassett supposedly signed. At no point does EA state with specificity that it is invoking a particular TOS with a particular arbitration provision. Since EA failed to point to the TOS that it believes is binding, which would purportedly contain an arbitration provision, EA has failed to make out a *prima facie* case that the agreement to arbitrate exists. As such, the Defendant's Motion to Compel Arbitration should be denied.

## C.    EA'S ARGUMENTS IN FAVOR OF TRANSFER ARE MERITLESS

EA's contends that if the Court declines to compel arbitration, it "must transfer this case under § 1404(a)." Def. Mem. at 16–17.  Defendant is wrong.

### 1.    Defendant's Motion to Transfer Is Premature and Should be Denied in Order to Allow for Discovery on the Issue

In its letter motion for a pre-motion conference, Defendant made the following representation to the Court:

> <u>Dismissal for Failure to State a Claim.</u> Plaintiff's allegation that the logo "Xbox Live" affirmatively misrepresents the duration of online features fails. First, the phrase "Xbox Live" makes no representation, express or implied, regarding the duration of online features. Thus, Plaintiff has failed to plead an actionable misrepresentation.
>
> \*  \*  \*
>
> ***If all grounds for dismissal fail, EA moves to transfer the action pursuant to 28 U.S.C. § 1404 (a).*** Convenience of the parties and witnesses as well as the interests of justice support transfer. First, the forum selection clause in the TOS requires litigation that is not subject to arbitration to be brought within the Northern District of California. Second, the evidence supporting the motion shows that EA's principal place of business is located in Redwood City, California, which is within the Northern District of California.  Third, none of the relevant defense witnesses or documents are located in New York.

*See* Defendant's November 11, 2013 Letter Motion Requesting Pre-Motion Conference (Dkt. 6).

In other words, Defendant represented to the Court that Defendant would only make a motion to transfer if the Court denied Defendant's Rule 12(b)(6) Motion for Failure to State a Claim.  Defendant has not made such a Rule 12(b)(6) motion, but instead has stated that it plans to make such a motion at a later stage of the litigation.  *See* Letter from Ken Dreifach to Magistrate Brown dated February 24, 2014 (Dkt. 16).  Yet, despite its representation to this Court that Defendant would move for transfer only "if all grounds for dismissal fail," Defendant has now moved for transfer.  This gamesmanship by Defendant should be rejected, and Defendant should be held to its representation to the Court.  Furthermore, Defendant's conduct

blatantly constitutes forum shopping—*i.e.*, Defendant is seeking to transfer this action in order to have its motion to dismiss heard by another Court. "The plausible possibility that [Defendant is] using Section 1404(a) as a means of forum shopping weighs against granting [Defendant's] motion." *Greater Yellowstone Coal. v. Bosworth*, 180 F. Supp. 2d 124, 130 (D.D.C. 2001) (citing *Ferens v. John Deere Co.*, 494 U.S. 516, 527, 110 S. Ct. 1274, 1282, 108 L. Ed. 2d 443 (1990)).[8] Accordingly, Defendant's Motion to Transfer should be denied.

## 2. Even If the Court Were to Address the Motion to Transfer Now (Which It Should Not), It Should Not Transfer Plaintiff's Case to Another Court

Even if the Court were to determine the forum selection issue now (which it should not), EA's arguments concerning transfer are wrong. EA misapplies the legal framework for analyzing a Section 1404(a) transfer motion on the basis of an alleged pre-existing agreement to a forum. Applying the correct legal framework here requires that the Court first determine under state contract law whether there is a binding and legally enforceable contract. As seen above, there is no agreement here. Second, because there is no valid agreement requiring Mr. Bassett to litigate these claims in a different forum, the Court then evaluates transfer under a traditional Section 1404(a) analysis. Because the traditional 1404(a) factors weigh heavily in favor of Mr. Bassett, the Court should deny EA's Motion to Transfer this case to the Northern District of California.

---

[8] *See Iragorri v. United Technologies Corp.*, 274 F.3d 65, 75 (2d Cir. 2001) ("Courts should be mindful that, just as plaintiffs sometimes choose a forum for forum-shopping reasons, defendants also may move…because of similar forum-shopping reasons. District courts should therefore arm themselves with an appropriate degree of skepticism in assessing whether the defendant has demonstrated genuine inconvenience and a clear preferability of the foreign forum.").

### a. EA presumes applicability of the wrong law

EA's first misstep is that it presumes that the legal standards set forth in *M/S Bremen v.*
*Zapata Off-Shore Co.* and *Carnival Cruise Lines, Inc. v. Shute*—both of which are admiralty
cases decided under federal common law—control the transfer inquiry in the context of a Section
1404(a) motion in a diversity action. *See* Def. Mem. at 17–20 (citing *M/S Bremen v. Zapata Off-*
*Shore Co.*, 407 U.S. 1, 2 (1972); *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 587 (1991)).
EA is wrong. Specifically, EA's approach requires the Court to incorrectly presuppose the
***validity*** of the forum selection provision without any consideration of whether an underlying
binding agreement between the parties containing such a provision exists in the first place. Def.
Mem. at 17.[9] This is a question that must be determined under state principles of contract law,
and the Court should not rely on federal common law to evaluate the substantive contract law
issues present here. Then, EA's approach incorrectly requires the Court to apply a four-step
interpretation-enforceability analysis set forth in *Bremen* to this dispute. Def. Mem. at 17–20.
And even if the Court finds the existence of a valid agreement concerning choice of forum, the
strict and confining standards of the four-step combined *interpretation-enforceability* analysis
articulated in *Bremen* and *Shute* does not govern resolution of this Motion. Finally, without
making any showing of a contractually sound agreement to the forum, and taking the Court
through the inapplicable *Bremen* test to erroneously conclude that the provision is both "*prima*
*facie* valid" and enforceable, EA incorrectly states that *Atlantic Marine Construction Co., Inc. v.*

---

[9] As explained in this Opposition, *Bremen* does not control here because it relies wholly on
federal common law, and Defendant conflates *Bremen*'s "*prima facie* valid" holding with the
question of the underlying validity of an agreement to choice-of-forum, which is a substantive
state law issue.

*U.S. District Court for Western District of Texas*, dictates that transfer is "mandatory." *See* Def. Mem. at 20; *Atl. Marine Constr. Co., Inc. v. U.S. Dist. for W. Dist. of Tex.*, 134 S. Ct. 568 (2013).

EA's approach is wrong for several reasons.

*First*, because EA's Motion requests transfer under Section 1404(a) in a diversity action, the cases of *Stewart Org., Inc. v. Ricoh Corp.* and *Atlantic Marine*, and not *Bremen* or *Shute*, govern the validity and enforceability of the forum selection provision. *Atl. Marine*, 134 S. Ct. at 568; *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988). EA has moved for intra-federal transfer under Section 1404(a). The Supreme Court has expressly held that the legal framework for analyzing a forum selection clause set forth in *Bremen*, and later applied in *Shute*, does not control in the context of intra-federal transfer motions under Section 1404(a) in diversity actions. *Stewart*, 487 U.S. at 28–29 (holding enforceability of a forum selection clause pursuant to Section 1404(a) motion should not have been analyzed under the four-part *Bremen* test, but rather made according to Section 1404(a) balancing test).[10] Furthermore, unlike *Bremen* or *Shute*, this case does not involve admiralty law (which is borne of federal common law), or any other federal question. *See Stewart*, 487 U.S. at 28–29 (citing to prior Supreme Court precedent

---

[10] *See also TradeComet.com LLC v. Google, Inc.*, 647 F.3d 472, 478 (2d Cir. 2011) (holding that "*Stewart* deals with motions to transfer pursuant to § 1404(a), while *Bremen* and *Shute* address the grant of dismissal or summary judgment based on a forum selection clause"); *Red Bull Assoc. v. Best W. Int'l, Inc.*, 862 F.2d 963 (2d Cir. 1988) (applying Section 1404(a) analysis and denying motion to transfer based on forum selection clause); *Weiss v. Columbia Pictures Television, Inc.*, 801 F. Supp. 1276, 1278 (S.D.N.Y. 1992) ("The proper methodology for addressing a motion to transfer under section 1404(a) was set out by the Second Circuit in *Red Bull* . . . This Court must determine whether the forum selection clause is valid with reference to the factors specified in section 1404(a)[.]").

to reiterate that "federal common law developed under admiralty jurisdiction [is] not freely transferable to [the] diversity setting").

**Second**, the Court must use principles of state substantive contract law to determine the existence of a legally enforceable agreement between the parties containing a forum selection clause. *See Martinez v. Bloomberg LP*, 740 F.3d 211, 220–21 (2d Cir. 2014) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)) (noting that "[i]n construing a forum selection clause, a court may confront a wide range of contract law issues . . . *Erie* warns against an approach that would force federal courts to generate a sprawling 'federal general common law' of contracts to govern such questions whenever they arise in the context of forum selection clauses"); *Stewart*, 487 U.S. at 35 ("[Section] 1404(a) was enacted against the background that issues of contract, including a contract's validity, are nearly always governed by state law."); *see also Cline v. Carnival Corp.*, case no. 3:13-cv-1090-B, 2014 WL 550738, at *2 (N.D. Tex. Feb. 12, 2014) ("[T]he Court must first determine whether the forum selection clause is valid and enforceable under applicable contract law, and assuming it is, the Court must next evaluate whether to enforce the clause under *Atlantic Marine*'s analytical framework.").

**Finally**, the appropriate analysis under Section 1404(a) depends on federal law *only* to determine whether to transfer pursuant to a valid forum selection clause, *i.e.*, to determine whether to enforce the clause. The Supreme Court's holding in *Stewart* was narrow: Section 1404(a) "governs the District Court's decision *whether to give effect* to the parties' forum-selection clause" and transfer. *Stewart*, 487 U.S. at 23 (emphasis added). In other words, federal law—Section 1404(a)—governs enforceability, *not validity*. *See Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1068–70 (11th Cir. 1987) (*en banc*), *aff'd* 487 U.S. 22; *see also Bright v. Zimmer Spine, Inc.*, No. 14-CV-00095-WMA, 2014 WL 588051, at *2 (N.D. Ala. Feb. 14, 2014)

36

("In such a case, the state issue, [validity], is first and separate from the federal issue, and federal law could not be said to preempt applicable state law."). Thus, whether to effect the transfer under Section 1404(a) due to the forum selection provision is the only relevant question of federal law—the entirety of the analysis that precedes that question is a matter of state substantive law.[11] *See Martinez*, 740 F.3d at 220–21; *see also Preferred Capital, Inc. v. Sarasota Kennel Club, Inc.*, 489 F.3d 303, 308 (6th Cir. 2007) ("[State] law should apply to the interpretation of this forum selection clause. To apply federal law would undercut both aims of the *Erie* test—it would encourage forum shopping by providing differing outcomes in federal and state court."); *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 374 (7th Cir. 1990) (noting that "[v]alidity and interpretation are separate issues, and it can be argued that as the rest of the contract in which a forum selection clause is found will be interpreted under the principles of interpretation followed by the state whose law governs the contract, so should that clause be."); *Stewart*, 810 F.2d at 1076–77 (11th Cir.) ("The fallacy in characterizing the problem as 'just a dispute over venue' is that it leads [one] to conclude that because there is a federal venue statute the dispute is a procedural matter and therefore a federal matter. . . . This case is not about what court is suitable. It is about an agreement to choose between suitable courts.").

*Stewart* and *Atlantic Marine* control only the enforcement inquiry here. *Atlantic Marine* does not address the validity inquiry or hold that a forum selection clause should be deemed "presumptively valid" (despite EA's contention, *see* Def. Mem. at 17); rather, the enforceability

---

[11] Although cases that require legal analysis under *Bremen* may apply state law to questions of "interpretation" under the *Bremen* test, they do so by way of federal common law choice of law principles. *See, e.g.*, *Martinez*, 740 F.3d 211. Unlike those cases, federal common law plays no role here, and state law directly applies by way of the *Erie* doctrine.

analysis is only triggered once a valid forum selection clause has been established, *i.e.*, after a court has looked to state contract principles to confirm the underlying validity of the provision being invoked by the moving party. *Atl. Marine*, 134 S. Ct. at 583. As EA concedes, *Atlantic Marine* assumed the existence a valid forum selection clause in that case, which further demonstrates that validity and enforceability are distinct concepts that demand separate legal inquiries. *See* Def. Mem. at 20; *Atl. Marine*, 134 S. Ct. at 581 n.5 ("Our analysis presupposes a contractually valid forum-selection clause.").[12]

If the Court finds the forum selection provision is valid, only then should it determine the provision's enforceability using the modified 1404(a) analysis set forth in *Atlantic Marine*. The standard for a motion to transfer an action to a sister court in another federal district on the basis of a *valid* forum selection clause, which calls for an "individualized, case-by-case consideration of convenience and fairness," is highly discretionary and less restrictive than the *Bremen* standard courts have applied in the context of motions to dismiss. *See Jones v. Weibrecht*, 901 F.2d 17, 19 (2d Cir. 1990) (holding the "broad-based balancing test under 1404(a) is not appropriate where . . . a party seeks to have an action dismissed or remanded to state court, rather than transferred, on the basis of a forum selection clause"). Although the Court may look to *Bremen*—which held that federal courts sitting in admiralty generally should enforce forum-selection clauses that are "*prima facie* valid" under the factors it set forth, absent a showing that

---

[12] Even in the context of *Bremen*, which is inapplicable here, when a court looks to whether to give a forum selection clause "full effect" by using the four-prong test to determine whether a forum selection clause is "*prima facie* valid" and enforceable, a court must answer the threshold question of whether a "freely negotiated" choice of forum provision exists in the first place. *See Bremen*, 111 S. Ct. at 1914–15.

to do so would be unreasonable and unjust—as "instructive" when conducting analysis under the "interest of justice" prong of Section 1404(a), it is unclear to what extent *Bremen* may properly bear on analysis of that prong. *Stewart*, 487 U.S. at 28–29; *Martinez*, 740 F.3d at 219 ("*Atlantic Marine* did not address the extent to which the 'interest of justice' test for invalidating a forum selection clause pointing to another federal district court resembles the test developed under *Bremen* for invalidating a forum selection clause pointing to a nonfederal forum.").

If the Court finds the forum selection provision is invalid, the traditional Section 1404(a) analysis applies.

> **b.** **Mr. Bassett's contract with EA did not contain a valid and enforceable forum selection provision**

As discussed above, when analyzing whether to transfer to a sister federal court under Section 1404(a), the Court must first use state contract principles to determine the existence of a legally enforceable contract between the parties. No such provision exists in the contract made between the parties here.[13]

The forum selection provision invoked by EA was contained in the same TOS as the arbitration provision. Thus, like the arbitration provision, the forum selection clause can only be incorporated into the agreement if: (1) it was part of the first contract by reference to the website on the packaging; or (2) it was incorporated through the formation of a second contract when Mr. Bassett clicked "I Accept." For the reasons discussed in Part B.2, the TOS were not incorporated in any agreement between Plaintiff and EA. Because the TOS were not incorporated, the forum

---

[13] As discussed above, the Court should apply New York law in determining issues of contract formation. *See, supra*, Part A.

selection clause was not incorporated, and Plaintiff never consented to transfer to a different forum. As discussed below, under traditional analysis under Section 1404(a), the Court should retain jurisdiction of Plaintiff's case, and it should deny Defendant's Motion to transfer.

### c. The forum selection clause is unenforceable because it is illusory

The forum selection clause was illusory, and therefore is unenforceable. As discussed above, if a promisor retains an unlimited right to decide later the nature or extent of his performance, the promise is illusory and, therefore, unenforceable. *See, supra*, Part B.2.b. For the same reasons discussed above, Paragraph 3 of the TOS allows EA to unilaterally modify any term at any time. This includes the forum selection clause. *Id.* Further, notice of these modifications is obscure and obfuscated. *Id.* Finally, if EA's retroactive argument is to be believed, EA retained the right to change the forum of a pending action. *Id.* Thus, EA retained an unlimited right to decide later the existence, nature, and extent of the forum selection clause. As such, the forum selection clause was illusory, and is, therefore, unenforceable.

### d. The forum selection provision in the TOS is unconscionable

In both New York and California, a contract is unenforceable if it is both procedurally and substantively unconscionable. *NML Capital*, 621 F.3d at 237; *Hameed*, 520 Fed. Appx. at 522. "Procedural and substantive unconscionability operate on a sliding scale; the more questionable the meaningfulness of choice, the less imbalance in a contract's terms should be tolerated and vice versa." *Hojnowski*, 2014 WL 408717 at *4; *see also Bridge Fund*, 622 F.3d at 1004.

The forum selection clause was contained in the same TOS as the arbitration clause. As discussed above, those TOS are procedurally unconscionable. *See, supra*, Part B.3.a. As such the forum selection clause is procedurally unconscionable.

Further, because the TOS was suffused with a high degree of procedural unconscionability, only a moderate finding of substantive unconscionability is required to render the arbitration provision unconscionable. *Merkin*, 2014 WL 457942, at *9. As discussed above, substantive unconscionability exists where a term is unreasonably favorable or one-sided to a party. *See, supra*, Part B.3.b. For the following reasons, the forum selection clause and the whole TOS are substantively unconscionable.

(i) EA's authority to unilaterally modify the forum selection clause makes it substantively unconscionable

As discussed above, Paragraph 3 of the TOS allowed EA to modify any term, including the forum selection clause at any time. *See, supra*, Part B.2, Part C.2.b. This right rested solely with EA. Windrem Decl., Ex. 11, at ¶ 3. Further, notice of these modifications is obscure and obfuscated. *Id.* The unilateral ability to change the forum selection clause at any time, with only obscure notice, and for those changes to apply even to pending actions, unreasonably favors EA.

(ii) Unconscionable terms permeate the TOS, and, consequently, the entire TOS are unenforceable

There are so many terms within the TOS that are unconscionable that severability would be futile, and the entire TOS are unconscionable. Courts have found that where unconscionability permeated a contract, severability is futile and the entire contract is unconscionable. *See Bridges Fund*, 622 F.3d at 1006; *Armendariz*, 24 Cal. 4th at 124; *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1293 (9th Cir. 2006); *Alexander v. Anthony Int'l, L.P.*, 341 F.3d 256, 271 (3rd Cir. 2003); *Bancroft Life & Cas., ICC, Ltd. v. Lo*, No. 12CV1431, 2013 WL 5670878, at *12 (W.D. Pa. 2013).

Here, as discussed above, Paragraph 3 permits the modification of any term in the TOS at any time, without notice. *See, supra*, Part C.2.b. As such, EA could change any term in the TOS to something that is unreasonably favorable to it. Mr. Bassett has no means to stop any such change, and, according to EA, it would be retroactive.

Further, as discussed above, the Dispute Resolution section is substantively unconscionable because of EA's unilateral right to modification, carve outs, and a limitation on Mr. Bassett's statutory remedies. *See, supra*, Part B.3.b.(i)–(iii). Finally, the Cancellation and Limitation sections are substantively unconscionable because of a limitation on Mr. Bassett's statutory remedies. *See, supra*, Part B.3.b.(iii).

Because both the forum selection clause and the entire TOS are both procedurally and substantively unconscionable, they are unconscionable and thus unenforceable. As such, there is no enforceable forum selection clause, and, for the reasons given below in Part C.2.g, the Court should retain jurisdiction of this case.

### e. Even applying the *Bremen* test, the forum selection clause is invalid

As set forth above in Part C.2.a, the four-prong *Bremen* test[14] does not control the inquiry of whether to transfer this action under Section 1404(a) based on the forum selection clause.

---

[14] The *Bremen* test to determine whether to dismiss under the *forum non conveniens* doctrine based on a forum selection clause involves a four-part analysis. *Martinez*, 740 F.3d at 217. The courts ask: (1) whether the clause was reasonably communicated to the party resisting dismissal; (2) whether the clause is mandatory or permissive; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. *Id.* (citation omitted). If the forum clause meets these requirements, a presumption arises that the court should dismiss the claim which the party opposing dismissal can only overcome by (4) making a sufficiently strong showing that dismissal would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching. *Id.* (citation omitted).

Nonetheless, in the event this Court finds the forum selection provision to be valid under state contract principles, it will have to determine whether the forum selection is enforceable by considering it as a factor as part of a modified *Atlantic Marine* Section 1404(a) transfer analysis. Because the *Bremen* test may be "instructive" in evaluating the "interests of justice" prong of the modified *Atlantic Marine* Section 1404(a) balancing test, *see Stewart*, 487 U.S. at 28–29, Mr. Bassett addresses EA's *Bremen*-related arguments below. Specifically, contrary to EA's arguments, EA did not reasonable communicate the forum selection clause to Plaintiff. Moreover, Plaintiff's case does not fall within the scope of the forum selection clauses used from August 25, 2011, forward.

          (i)       EA did not reasonably communicate the forum selection clause to Mr. Bassett

As EA notes, "reasonable communication" is an alternate characterization of the mutual assent inquiry. Def. Mem. at 17. "'While new commerce on the Internet has exposed courts to many new situations, it has not fundamentally changed the principles of contract.'" *Edme v. Internet Brands, Inc.*, 968 F. Supp. 2d 519, 525 (E.D.N.Y. 2013) (quoting *Register.com, Inc.*, 356 F.3d at 403). "Mutual manifestation of assent, whether by written or spoken word or by conduct is one such principle." *Id.* (internal citation and quotation marks omitted).

Here, Mr. Bassett did not assent to the TOS at the point of sale, and nothing on the box communicated the existence of a forum selection clause to Mr. Bassett. *See, supra*, Part B.2.a; s*ee also PowerDsine, Inc. v. Broadcom Corp.*, No. 07-CV-2490(SJF)(WDW), 2008 WL 268808, at *9 (E.D.N.Y. Jan. 29, 2008) (holding contract with ambiguous terms unenforceable). For this reason and the reasons discussed above with regard to whether the parties ever formed a contract containing the TOS, mutual assent did not exist with respect to the forum selection clause and EA did not reasonably communicate the forum selection clause to Mr. Bassett.

(ii) The forum selection clauses EA used from August 25, 2011, forward do not apply to Mr. Bassett's action

Beginning on August 25, 2011, the forum selection clause expressly conditioned its applicability to a few select fact scenarios enumerated in the arbitration clause, using the phrase "to the extent applicable pursuant to section 20 [*i.e.*, the arbitration clause]." Windrem Decl., Ex. 14, at 140 (August 25, 2011 TOS update); *id.*, Ex. 13, at 124 (November 28, 2011 TOS update); *id.*, Ex. 11, at 91 (September 4, 2012 TOS update); *id.*, Ex. 12, at 108 (September 4, 2012 TOS update for Xbox). What the phrase "to the extent applicable pursuant to section 20" means is that the post-August-2011 forum selection clauses, under their plain language, apply only to those claims that fall outside the scope of the arbitration clause. In other words, if a claim falls under the arbitration clause, then the forum selection clause is not applicable (pursuant to section 20). Conversely, if a claim falls outside of the arbitration clause, ***only then is the forum selection clause applicable***.

As EA concedes, "[t]he only claims that fall outside the scope of the arbitration provision are those involving intellectual property rights, claims arising from theft, piracy or unauthorized use, or claims that can be brought in small claims court—***none of which apply to this case***." Def. Mem. at 6 (emphasis added). Consequently, EA necessarily concedes that the August 25, 2011 forum selection clause and all subsequent forum selection clauses do not apply to this case, in accordance with their plain language. EA does not even attempt to argue otherwise. *See* Def. Mem. at 19. For this reason alone, the August 25, 2011 forum selection clause and all subsequent forum selection clauses do not require dismissal (and certainly not transfer) under the *Bremen* test.

####### f. Refusal to transfer is in the court's discretion under *Atlantic Marine*

Even if the Court finds the forum selection provision is valid, *Atlantic Marine* does not make transfer "mandatory" in that event, as EA would have the Court believe. *See* Def. Mem. at 20. *Atlantic Marine* unequivocally held that a valid and otherwise enforceable forum selection clause is but one factor, albeit a strong one, in determining whether to compel transfer under the balancing test enunciated under 1404(a). *Atl. Marine Const. Co.*, 134 S. Ct. at 581–83 (discussing adjustments courts must make to 1404(a) analysis in the event a forum selection clause is valid).

####### g. The Court should retain jurisdiction of Mr. Bassett's action under 28 U.S.C. § 1404

Section 1404(a) provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented. 28 U.S.C. § 1404(a). The burden is on the moving party to show transfer under Section 1404(a) is warranted. *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106 (2d Cir. 2006); *accord Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979).

The decision of whether to transfer the case under Section 1404(a) involves an "individualized, case-by-case consideration of convenience and fairness," which the Court exercises its discretion to resolve. *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964); *New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000); *see Stewart*, 487 U.S. at 29.

In the Second Circuit, the factors the court may consider in determining whether to grant a motion to transfer venue under Section 1404(a) include but are not limited to:

> (1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, and (7) the relative means of the parties.

*New York Marine & Gen. Ins. Co.*, 599 F.3d at 112 (internal citation and quotation marks omitted). "Some courts have identified additional factors, including (1) 'the forum's familiarity with governing law,' and (2) 'trial efficiency and the interest of justice, based on the totality of the circumstances.'" *EasyWeb Innovations, LLC v. Facebook, Inc.*, 888 F. Supp. 2d 342, 348 (E.D.N.Y. 2012). Courts within the Ninth Circuit consider similar factors. *Jones*, 211 F.3d at 498–99.

Significantly, many of these factors (such as the location of witnesses and relevant documents) are an evidentiary issue that requires discovery in order to evaluate. Defendant's motion, however, is premature, as discovery on these issues has not yet taken place. For this reason, Defendant's Motion should be denied as premature.

Nonetheless, even if this Court were to examine the factors based on an incomplete record, the factors demonstrate that transfer should not occur and that the action should remain in Mr. Bassett's choice of forum—the place where he lived and purchased the products at issue.

**First**, Mr. Bassett's choice of forum is "a decision that is given great weight." *D.H. Blair & Co., Inc.*, 462 F.3d at 107; *accord Trend Micro Inc. v. RPost Holdings, Inc.*, No. 13-CV-05227-WHO, 2014 WL 1365491, at *4 (N.D. Cal. Apr. 7, 2014). "Thus, a plaintiff's choice of venue is entitled to significant consideration and will not be disturbed unless other factors weigh strongly in favor of transfer." *EasyWeb Innovations, LLC*, 888 F. Supp. 2d at 348 (internal citation and quotation marks omitted). The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum. *Decker Coal Co. v.*

*Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Moreover, "a plaintiff's choice of forum is entitled to [even] greater deference when the plaintiff has chosen the home forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255, 102 S. Ct. 252, 266, 70 L. Ed. 2d 419 (1981).

Here, Mr. Bassett chose to sue in this Court. Furthermore, Mr. Bassett was a resident in Brooklyn, New York, during the relevant time period and made the product purchases at issue in New York. Compl., ¶ 14. Consequently, the Court should afford Mr. Bassett's forum choice great deference, which EA must make a very strong showing to overcome. *D.H. Blair & Co., Inc.*, 462 F.3d at 107; *Decker Coal Co.*, 805 F.2d at 843; *Piper Aircraft Co.*, 454 U.S. at 255. Mr. Bassett has also chosen counsel who are based in New York and who reside in Brooklyn and regularly practice in Brooklyn courts.

*Second*, the locus of the operative facts is within this District. Mr. Bassett was living in Brooklyn, New York, within this District, when he made all of the Product purchases at issue in Brooklyn, in reliance on the false and misleading representations EA communicated to Mr. Bassett in Brooklyn. Compl., ¶ 14. Mr. Bassett's economic injuries occurred within this District, which was Mr. Bassett's home at the time. Thus, there are significant contacts relating Mr. Bassett's cause of action to New York. Similarly, the parties have numerous contacts with New York, as EA sells the Products throughout the state and Mr. Bassett's purchases all occurred in New York while he was living in New York. *Jones*, 211 F.3d at 498 (listing "the respective parties' contacts with the forum" as a factor to be weighed in 1404(a) analysis).

*Third*, "[w]here a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *EasyWeb Innovations, LLC*, 888 F. Supp. 2d at 354–55 (internal citations and quotation marks omitted). Here, EA is a large corporation with

offices throughout the country, including those based in New York. EA has vastly superior financial resources to Mr. Bassett, an individual. *See, supra*, Part B.3.a. Thus, this factor favors retention of Mr. Bassett's action in New York.

**Finally**, several of the remaining factors are either neutral or favor keeping the case in this Court. First, both forums are able to compel the attendance of unwilling witnesses, so "the availability of process to compel" such attendance is a neutral factor. Second, neither court is more familiar with the governing law, despite EA's assertion otherwise. *See* Def. Mem. at 22 (arguing Mr. Bassett "brings claims under California statutes and California is more familiar with the application of its own law"). Mr. Bassett brings claims under both New York and California law. Compl., ¶¶ 41–52, ¶¶ 90–95. As a result, neither the Northern District of California nor this Court is more familiar with the governing law. Third, the interests of justice favor litigation in New York because the State of New York has a strong interest in protecting persons injured within its borders by unfair and deceptive trade practices.

In sum, Mr. Bassett's forum choice (a heavily-weighted factor), the locus of the injury, and the relative means of the parties all strongly favor keeping the case within this Court, and many of the remaining factors are neutral or suggest transfer would be inappropriate. The few factors that may arguably favor EA do not overcome the overwhelming weight of factors favoring denial of transfer under Section 1404. *See Whitney Lane Holdings, LLC v. Sgambettera & Associates, P.C.*, No. 08-CV-2966 JS, 2010 WL 4259797, at *3 (E.D.N.Y. Sept. 8, 2010) (argument that "virtually all non-party witnesses" were located in the proposed transferee district was unpersuasive because plaintiff's choice of forum was "presumptively entitled to substantial deference" and because the movant had not demonstrated that most witnesses existed in the transferee district or would have difficulty testifying if forced to litigated in original district).

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's Motion in its entirety.

Respectfully submitted,

Dated: May 2, 2014

**REESE RICHMAN LLP**

 */s/ Michael R. Reese*
Michael R. Reese
Kim E. Richman
George Granade
875 Avenue of the Americas, 18th Floor
New York, New York 10001
Telephone:      (212) 643-0500
Facsimile:      (212) 253-4272
Email:          *mreese@reeserichman.com*
                *krichman@reeserichman.com*
                *ggranade@reeserichman.com*

**HALUNEN & ASSOCIATES**
Clayton D. Halunen
Susan Coler
Melissa Wolchansky
1650 IDS Center
80 S 8th Street
Minneapolis, Minnesota 55402
Telephone: (612) 605-4098
Facsimile:  (612) 605-4099
Email: *Halunen@halunenlaw.com*
       *Coler@halunenlaw.com*
       *Wolchansky@halunenlaw.com*

*Counsel for Plaintiff and the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that on May 2, 2014, I caused the foregoing to be served on counsel of record for the Defendant.

                     _/s/ Michael R. Reese_____
                     Michael R. Reese