UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------
JUSTIN T. BASSETT, on behalf of himself and all
others similarly situated,

      Plaintiff,      **MEMORANDUM & ORDER**
                13-CV-4208 (MKB)
   v.

ELECTRONIC ARTS, INC.,

      Defendant.
------------------------------------------------------------
MARGO K. BRODIE, United States District Judge:

   Plaintiff Justin T. Bassett filed a complaint on July 24, 2013, against Defendant

Electronic Arts, Inc. ("EA"), seeking to certify a nationwide class and a New York sub-class of

similarly-situated individuals who purchased certain video games manufactured, advertised, and

sold by EA.  Plaintiff alleges that EA mislead consumers as to the ability to use EA's online

platform to play certain games with other consumers via the Internet, bringing claims for

violations of:  California's Consumers Legal Remedies Act, California Civil Code § 1750 *et seq.*;

California's False Advertising Law, California Business and Professions Code § 17500 *et seq.*;

California's Unfair Competition Law, California Business and Professions Code § 17200 *et seq.*;

and for breach of express warranty, breach of implied warranty of merchantability, and breach of

implied warranty of fitness for a particular purpose.  (Compl. ¶¶ 1, 41–89.)  Plaintiff, on behalf

of the putative New York sub-class, also alleges a violation of New York General Business Law

section 249, and unjust enrichment.  (Compl. ¶¶ 90–99.)  EA moved to compel arbitration and

dismiss the action under Section 2 of the Federal Arbitration Act, ("FAA"), 9 U.S.C. § 2, and

Rule 12(b)(1) of the Federal Rules of Civil Procedure or, alternatively, to transfer venue to the

Northern District of California pursuant to 28 U.S.C. § 1404(a).  (Docket Entry No. 27.)  The

parties conducted relevant discovery prior to filing the motion.  (Docket Entry Nos. 8, 17.)  The

motion was referred to Magistrate Judge Steven M. Gold for a report and recommendation.

By Report and Recommendation ("R&R") dated February 9, 2015, Judge Gold

recommended that the Court: (1) grant EA's motion to compel arbitration; (2) stay this action

pending arbitration pursuant to Section 3 of the FAA; and (3) deny EA's motion to transfer

venue without prejudice to renewal if there is to be further litigation following arbitration.

(Docket Entry No. 35.)  On March 5, 2015, Plaintiff filed objections.  (Docket Entry No. 39.)

On March 19, 2015, Defendant filed a response to Plaintiff's objections, arguing that the Court

should adopt the R&R.  (Docket Entry No. 40.)  No other objections were filed.  For the reasons

set forth below, the Court adopts the R&R in its entirety.

## I.   Background

The following facts are taken from the Complaint, the Declaration of Dan Windrem,

Producer of EA Tech and Global Online Services at EA, filed in support of EA's motion,

("Windrem Decl.,"annexed to Def. Mot. to Compel, Docket Entry No. 27-3), and the exhibits

annexed thereto.[1]  Only the facts necessary to decide the instant motion are included below.

EA is in the business of manufacturing, advertising, and distributing video games in the

form of discs compatible with gaming console systems such as Xbox, PlayStation and Wii.

(Compl. ¶¶ 15–21.)  EA also offers additional services with certain of its video games, which

---

[1] A court may consider documents outside of the pleadings for the purposes of determining the arbitrability of a dispute.  *Murphy v. Canadian Imperial Bank of Commerce*, 709 F. Supp. 2d 242, 244 n.2 (S.D.N.Y. 2010) (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat'l Ins. Co.*, 263 F.3d 26, 32–33 (2d Cir. 2001) and *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06-CV-839, 2006 WL 2265041, at *3 (S.D.N.Y. Aug. 8, 2006)).

allow video game consumers to interact and play the games with one another via the Internet ("EA Online").  (*Id.* ¶ 1.)

Plaintiff was a resident of Brooklyn, New York and a consumer of EA's video games.  (*Id.* ¶ 14.)  Prior to the commencement of the instant action, Plaintiff purchased several video games at retail prices.  (*Id.*)  Plaintiff alleges that he "relied upon the representation that these EA games were enabled for online play in deciding to purchase the Products."  (*Id.*)  On the back of each box for the various games Plaintiff alleged he purchased, in small but bolded font, was a notice that access to EA Online required registration and a subscription.  (*See* Copies of game packaging, annexed to Windrem Decl as Exs. 1–8.)[2]  The box further indicated that terms and conditions of use for EA Online products could be found at www.ea.com.  (Exs. 1–8)  For at least some of the games, a similar notice was included inside the packaging as well.  (*E.g.*, Ex. 1 at 11; Ex. 2 at 11; Ex. 3 at 7; Ex. 4 at 7; Ex. 5 at 7; Ex. 6 at 6; Ex. 7 at 7.)

On at least two occasions, on September 27, 2011 and November 21, 2012, Plaintiff activated EA Online services for FIFA 12 and FIFA 13, two of EA's video games.  (Windrem Decl. ¶ 29; Account Notes for justintbasset@gmail.com, annexed to Windrem Decl. as Ex. 19.) In order to activate EA Online, Plaintiff would have had to go through the following process. First, he had to register for an EA account.  (Windrem Decl. ¶ 24.)  The registration process required Plaintiff to affirmatively assent to EA's terms of service ("Terms of Service") and privacy policy.  (*Id.* ¶ 25.)  Registrants are typically presented with a screen prompting them to read the Terms of Service and privacy policy carefully, noting that the documents may affect their rights, and presenting links by which a registrant may access the full text of each

---

[2]  For ease of reference, the Court refers to the copies of game packaging annexed to the Windrem Declaration by their exhibit number rather than a description of the packaging.

3

agreement.  (*Id.*; *see also* Registration Flow Screenshot, annexed to Windrem Decl. as Ex. 18 (providing screen shots from registration process for Madden NFL 13, another EA video game).) Plaintiff would have been presented with four buttons, two of which are the links to the terms of service and privacy policy, one which reads "I Do Not Accept," and one which reads "I Have Read And Accept Both Documents."  (Windrem Decl. ¶ 25.)  If the registrant, Plaintiff in this case, does not click the button reading "I . . . Accept . . ." (hereinafter, "I Accept"), the registration process stops and the online features cannot be activated.  (*Id.* ¶ 26.)  Plaintiff clicked "I Accept," and activated the online service.

When the Terms of Service were updated, Plaintiff was presented with the updated version and again asked to assent.  (*Id.* ¶¶ 27, 30.)  In a similar process to the initial registration, consumers who already have access to EA Online are typically presented with the new version of the policy and must click another "I Accept"-type button.  (*Id.* ¶ 27.)  Consumers cannot continue to use EA Online after the Terms of Service have been updated without affirmatively consenting to the new version.  (*Id.*)  Records produced by EA indicate that Plaintiff had affirmatively accepted both the version dated August 25, 2011, and the current operative version of the Terms of Service.  (*Id.* ¶ 30; Account Management Tool for justintbassett@gmail.com, annexed to Windrem Decl. as Ex. 20 (showing "legal documents accepted").)

The two versions of Terms of Service at issue are substantially similar, in relevant part. (*See generally* Terms of Service for Xbox users, effective September 4, 2012 ("Sept. 2012 Terms"), annexed to Windrem Decl. as Ex. 12); Terms of Service for Xbox users, dated August 25, 2011 ("Aug. 2011 Terms"), annexed to Windrem Decl. as Ex. 14; Windrem Decl. ¶¶ 18, 20, 30 (identifying relevant versions of Terms of Service, noting Sept. 2012 Terms are currently effective for Xbox users, and Aug. 2011 Terms were effective until November 28, 2011 version

implemented).)  Both contain dispute resolution procedures to which both the consumer and EA

agree to be bound.  (Sept. 2012 Terms § 20; Aug. 2011 Terms § 20.)  The section cautions

readers to "PLEASE READ THIS CAREFULLY.  IT AFFECTS YOUR RIGHTS."  (Sept. 2012

Terms § 20; Aug. 2011 Terms § 20.)  It begins by explaining that the agreement covers all

consumers, and binds both parties, "to the fullest extent allowable by law," with exceptions for

certain consumers residing in other countries.  (Sept. 2012 Terms § 20; Aug. 2011 Terms § 20.)

The process provides that a consumer and EA will first attempt to negotiate any dispute

informally, following a written notice of dispute from one party to the other.  (Sept. 2012 Terms

§ 20A; Aug. 2011 Terms § 20A.)  To the extent such informal negotiation is unsuccessful:

> either [party] may elect to have the [d]ispute finally and
> exclusively resolved by binding arbitration.  Any election to
> arbitrate by one party shall be final and binding on the other.  YOU
> UNDERSTAND THAT BY THIS PROVISION, YOU AND EA
> ARE FOREGOING THE RIGHT TO SUE IN COURT AND
> HAVE A JURY TRIAL. . . . You and EA may litigate in court to
> compel arbitration, to stay proceeding pending arbitration, or to
> confirm, modify, vacate or enter judgment on the award entered by
> the arbitrator.

(Sept. 2012 Terms § 20B; Aug. 2011 Terms § 20B (capitalization in originals).)  The agreements

define the scope of arbitration broadly, covering "any and all disputes" except claims to enforce

or protect intellectual property rights, claims relating to allegations of theft, piracy, or

unauthorized use, and small claims actions.  (Sept. 2012 Terms § 20; Aug. 2011 Terms § 20.)

The arbitration provision also contains the following clause:

> Notwithstanding any provision in this Agreement to the contrary,
> we agree that if EA makes any future change to this arbitration
> provision . . . you may reject any such change by sending us
> written notice within 30 days of the change to the Arbitration
> Notice Address provided above.  By rejecting any future change,
> you are agreeing that you will arbitrate any dispute between us in
> accordance with the language of this provision.

5

(Sept. 2012 Terms § 20G; Aug. 2011 Terms § 20G.)  In an earlier provision in the introduction

of the document, the Terms of Service provide that:

> You agree to check terms.ea.com periodically for new information
> and terms that govern your use of EA Services.  EA may modify
> the Terms of Service at any time.  Revisions to terms affecting
> existing EA Services shall be effective thirty (30) days after
> posting at terms.ea.com.  Terms for new EA Services are effective
> immediately upon posting at terms.ea.com.

(Sept. 2012 Terms 1; Aug. 2011 Terms 1.)

Plaintiff commenced the instant action against EA, claiming that EA violated various

state statutes and common-law doctrines by deactivating his online gaming capabilities.

Defendant moves to compel arbitration on the grounds that Plaintiff's claims are covered by the

arbitration provision in the Terms of Service, described above.

## II.   Discussion

### a.   Standard of review

#### i.   Report and recommendation

A district court reviewing a magistrate judge's recommended ruling "may accept, reject,

or modify, in whole or in part, the findings or recommendations made by the magistrate judge."

28 U.S.C. § 636(b)(1)(C).  When a party submits a timely objection to a report and

recommendation, the district court reviews the parts of the report and recommendation to which

the party objected under a *de novo* standard of review.  28 U.S.C. § 636(b)(1)(C); *see also*

*Larocco v. Jackson*, No. 10-CV-1651, 2010 WL 5068006, at *2 (E.D.N.Y. Dec. 6, 2010).  The

district court may adopt those portions of the recommended ruling to which no timely objections

have been made, provided no clear error is apparent from the face of the record.  28 U.S.C.

§ 636(b)(1)(C); *see also Larocco*, 2010 WL 5068006, at *2.  The clearly erroneous standard also

applies when a party makes only conclusory or general objections, or simply reiterates its

original arguments.  *See Rahman v. Fischer*, No. 10-CV-1496, 2014 WL 688980, at *1

(N.D.N.Y. Feb. 20, 2014) ("If no objections are made, or if an objection is general, conclusory,

perfunctory, or a mere reiteration of an argument made to the magistrate judge, a district court

need review that aspect of a report-recommendation only for clear error." (citations omitted));

*Time Square Foods Imports LLC v. Philbin*, No. 12-CV-9101, 2014 WL 521242, at *2 (S.D.N.Y.

Feb. 10, 2014) (clearly erroneous standard applies when party reiterates arguments made to the

magistrate judge); *see also DePrima v. City of N.Y. Dep't of Educ.*, No. 12-CV-3626, 2014 WL

1155282, at *3 (E.D.N.Y. Mar. 20, 2014) (collecting cases).

### ii.   Motion to compel arbitration

To determine whether an action should be dismissed in favor of arbitration, the Court

must consider four factors: "(1) whether the parties agreed to arbitrate; (2) the scope of the

arbitration agreement; (3) whether, if federal statutory claims are asserted, Congress intended

those claims to be nonarbitrable; and (4) whether, if some but not all of the claims in the case are

arbitrable, the case should be stayed pending arbitration."  *McAllister v. Conn. Renaissance, Inc.*,

496 F. App'x 104, 106 (2d Cir. 2012) (citing *JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163,

169 (2d Cir. 2004)); *see also Scott v. JP Morgan Chase & Co.*, --- F. App'x ---, ---, 2015 WL

1187113, at *1 (2d Cir. Mar. 17, 2015) ("In deciding whether the parties have so contracted, a

court must consider (1) whether they 'have entered into a valid agreement to arbitrate, and, if so,

(2) whether the dispute at issue comes within the scope of the arbitration agreement.'" (quoting

*Ameriprise Fin. Servs., Inc. v. Beland* (*In re Am. Express Fin. Advisors Sec. Litig.*), 672 F.3d

113, 128 (2d Cir. 2011))).  The only issue currently in dispute is whether the parties agreed to

arbitrate.[3]

### b. Plaintiff's objections

#### i. Mutual assent to arbitrate

Judge Gold determined that Plaintiff entered into a valid arbitration agreement with EA when he accepted EA's Terms of Service in an attempt to access EA Online.  (R&R 7–14.)  He found that Plaintiff and EA entered into a "clickwrap"[4]-type agreement when EA presented Plaintiff with the Terms of Service and Privacy Policy and Plaintiff clicked "I Accept" in order to create an account and register for EA Online.  (R&R 7–8.)  After considering arguments from both Plaintiff and EA about precedents involving post-purchase arbitration agreements, including so-called "shrinkwrap"[5] contracts and other "terms-later" contracts, Judge Gold concluded that

---

[3]  Judge Gold found that the second, third, and fourth factors to determine whether an action should be dismissed in favor of arbitration were not in dispute, despite Plaintiff's earlier representations to the contrary.  (R&R 6 n.3.)  There are no objections to this finding.  The Court sees no clear error in Judge Gold's analysis, and therefore adopts the R&R as to factors two, three, and four in the test.  *See Bano v. Union Carbide Corp.*, 198 F. App'x 32, 34 (2d Cir. 2006) (noting that parties were obliged to object to specific findings in a magistrate judge's report and recommendation if they did not want to be bound by them); *see also Almonte v. Suffolk Cnty.*, 531 F. App'x 107, 109 (2d Cir. 2013) ("As a rule, a party's failure to object to any purported error or omission in a magistrate judge's report waives further judicial review of the point." (quoting *Cephas v. Nash*, 328 F.3d 98, 107 (2d Cir. 2003))).

[4]  A clickwrap agreement "presents the potential licensee (i.e., the end-user) 'with a message on his or her computer screen, requiring that the user manifest his or her assent to the terms of the license agreement by clicking on an icon.'"  *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 429 (2d Cir. 2004) (quoting *Specht v. Netscape Commc'ns Corp.*, 150 F. Supp. 2d 585, 593–94 (S.D.N.Y. 2001)).

[5]  "A shrinkwrap license typically involves (1) notice of a license agreement on product packaging (*i.e.,* the shrinkwrap), (2) presentation of the full license on documents inside the package, and (3) prohibited access to the product without an express indication of acceptance." *Register.com, Inc.*, 356 F.3d at 428.  Shrinkwrap contracts are also known as "terms-later" contracts or "end-user license agreements" because, typically, "the consumer does not manifest assent to the shrinkwrap terms at the time of purchase; instead, the consumer manifests assent to

Plaintiff had adequate notice of the Terms of Service and manifested affirmative assent to the Terms of Service, and otherwise concluded that both parties intended to be bound by the Terms of Service, including the arbitration provision.  (R&R 9–13.)

In his brief opposing the motion to compel arbitration, Plaintiff presented a number of general challenges to the Terms of Service agreement, attacking both its validity and formation. Judge Gold determined that challenges to the validity of the Terms of Service, as a whole, were subject to arbitration.  (R&R 20–21.)  Plaintiff rehashes those arguments in objecting to the R&R, arguing that the arbitration agreement cannot be enforced because it was not incorporated into a binding contract, either at the time of purchase or at the time Plaintiff activated his online services.  (Pl. Obj. 4–11.)

As an initial matter, Plaintiff is correct that whether an agreement to arbitrate exists is an issue for judicial determination.  *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 26–27 (2d Cir. 2002) ("[A]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." (quoting *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986)).  Generally, challenges to an arbitration clause fall into two categories:  "those that challenge the contract as a whole, and those that challenge the arbitration clause in particular."  *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 61 (2d Cir. 2012).  "If the challenge is to 'the arbitration clause itself — an issue which goes to the making of the agreement to arbitrate — the federal court may proceed to adjudicate it.'"  *Id.* (quoting *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006)).  However, challenges to the contract as a whole, "'either on a ground that directly

---

the terms by later actions."  *See id.* (collecting cases analyzing what "later actions" may constitute assent).

9

affects the entire agreement (*e.g.*, the agreement was fraudulently induced), or on the ground that

the illegality of one of the contract's provisions renders the whole contract invalid,'" must be

decided by an arbitrator. *Damato v. Time Warner Cable, Inc.*, No. 13-CV-994, 2013 WL

3968765, at \*4 (E.D.N.Y. July 31, 2013) (quoting *Buckeye Check Cashing*, 546 U.S. at 446); *see

also Arrigo v. Blue Fish Commodities, Inc.*, 408 F. App'x 480, 482 (2d Cir. 2011) ("'[A]n

arbitration provision is severable from the remainder of the contract' and so 'a party's challenge

to another provision of the contract, or to the contract as a whole, does not prevent a court from

enforcing a specific agreement to arbitrate.'" (quoting R*ent-A-Center, West, Inc. v. Jackson*, 561

U.S. 63, 70–71 (2010))); *Nicosia v. Amazon.com*, Inc., --- F. Supp. 3d ---, ---, 2015 WL 500180,

at \*8 (E.D.N.Y. Feb. 4, 2015) (quoting *Buckeye Check Cashing*, 546 U.S. at 440, for the rule that

challenges to contract as whole must be resolved by arbitrator).  As Judge Gold correctly

determined, this is, in part, because arbitration clauses are deemed "severable" or "separable"

from the remainder of the relevant contract, and a court must determine only whether the clause

itself suffers from a defect which would render it invalid.  *See Damato*, 2013 WL 3968765, at \*4

(citing *Rent-A-Center*, 561 U.S. at 70–71 and *Buckeye Check Cashing*, 546 U.S. at 445); *JLM

Indus.*, 387 F.3d at 170 ("This is true because arbitration clauses as a matter of federal law are

separable from the contracts in which they are embedded, and where no claim is made that fraud

was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass

arbitration of the claim that the contract itself was induced by fraud." (quoting *Prima Paint

Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 402 (1967)) (internal quotation marks and

alteration omitted)).

      Because Judge Gold's conclusion that Plaintiff's challenges to the Terms of Service as a

whole are properly referred to an arbitrator is not clearly erroneous, the Court adopts Judge

Gold's findings and conclusions on those grounds.  Plaintiff's objections that there was no

"binding agreement" or "binding contract," beyond objections relating to the arbitration clause

itself, must be resolved by an arbitrator.

As to Plaintiff's arguments directed specifically at the arbitration clause portion of the

agreement, in deciding whether a contractual obligation to arbitrate exists, "courts should

generally apply state-law principles that govern the formation of contracts."  *Applied Energetics,*

*Inc. v. NewOak Capital Markets, LLC*, 645 F.3d 522, 526 (2d Cir. 2011) (quoting *Mehler v.*

*Terminix Int'l Co.*, 205 F.3d 44, 48 (2d Cir. 2000)) (internal quotation marks omitted); *Friedman*

*v. Guthy-Renker LLC*, No. 14-CV-6009, 2015 WL 857800, at *3 (C.D. Cal. Feb. 27, 2015) ("In

deciding whether an arbitration agreement exists, courts 'apply ordinary state-law principles that

govern the formation of contracts.'" (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S.

938, 944 (1995))).[6]  The "touchstone" of whether a contract was formed, and thus an agreement

to arbitrate reached, is the requirement of "'[m]utual manifestation of assent, whether by written

or spoken word or by conduct . . . .'"  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th

Cir. 2014) (applying New York law) (quoting *Specht*, 306 F.3d at 29, which applied California

law; *Teah v. Macy's Inc.*, No. 11-CV-1356, 2011 WL 6838151, at *4 (E.D.N.Y. Dec. 29, 2011)

("Under New York law, '[t]he manifestation or expression of assent necessary to form a contract

may be by word, act, or conduct which evinces the intention of the parties to contract.  A party's

conduct indicates assent when he intends to engage in the conduct and knows or has reason to

---

[6] As Judge Gold explained in the R&R, the parties disagree as to whether New York or
California law applies, but the Court need not resolve this dispute because the parties have not
identified any meaningful difference between the relevant laws of California and New York and
appear to agree that for the purposes of the pending motion, the relevant law of both states is
substantially the same.  (R&R 7 n.4.)  Plaintiff cites both New York and California law in his
objection, and makes no objection as to this conclusion.

know that the other party may infer from his conduct that he assents.'" (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 507 (2d Cir. 2009)) (internal quotation marks omitted)).

Here, Plaintiff manifested assent to the agreement to arbitrate when he clicked "I Accept" during both the registration process and when later confronted with updated Terms of Service, and when he did not opt-out of the arbitration agreement using the process described in the arbitration clause. (*See* Sept. 2012 Terms § 20G; Aug. 2011 Terms § 20G.) As Judge Gold found, "it is clear that [P]laintiff agreed to the arbitration clause at the time he registered an account with [EA]." (R&R 9.) Plaintiff argues that this agreement is not enforceable, and that it was error for Judge Gold to conclude otherwise. Plaintiff argues that "[t]o be enforceable, the purported EA arbitration clause has to either have been: (1) incorporated as part of the initial point of purchase contract; or (2) part of a new contract formed at the time online play was accessed." (Pl. Obj. 4.) Plaintiff contends that Judge Gold "conflated these two very distinct legal events" in his analysis, thus concluding that the arbitration clause was enforceable. (Pl. Obj. 4–5.) Plaintiff argues that a proper analysis would conclude (1) the Terms of Service were not incorporated into the point-of-purchase contract as a "shrinkwrap," or "terms-later" agreement because only some consumers — not every consumer — were exposed to it, and even then, at a time spatially and temporally removed from purchase, (Pl. Obj. 5–7), and (2) at the time Plaintiff checked "I Accept," to accept the Terms of Service and access EA Online, there was no consideration for his agreement because "EA already had a preexisting duty to provide him access to online play," (Pl. Obj. 10). Plaintiff argues that EA's actions were "akin to Frigidaire selling a consumer a refrigerator, but requiring that consumer to sign terms of service to access the freezer. Access to the freezer was part of the basis of the bargain of the point of purchase contract." (Pl. Obj. 11.)

Assuming that access to EA Online was not adequate consideration for Plaintiff's promise to submit to arbitration,[7] EA's mutual obligation to submit to arbitration, and to be bound by arbitration, was sufficient consideration for Plaintiff's assent to do the same.  Mutual promises to arbitrate, while not necessary as consideration to support an agreement to arbitrate, can be sufficient consideration to support an arbitration agreement.  *See Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 123 n.13 (2d Cir. 2012) (examining, without deciding, whether modifications to arbitration agreements require consideration beyond agreement to arbitrate); *Doctor's Assocs., Inc. v. Distajo*, 66 F.3d 438, 452 (2d Cir. 1995) ("[W]e [have] suggested that mutual promises to arbitrate could constitute sufficient consideration to support an arbitration agreement, [though] we did not exclude the possibility that other consideration could support the agreement."); *Marciano v. DCH Auto Grp.*, 14 F. Supp. 3d 322, 337 (S.D.N.Y. 2014) ("Even if Plaintiff was correct that Defendants did not promise to hire or to consider hiring her in exchange for signing the Arbitration Agreement, the Agreement by itself contains sufficient consideration because, as discussed, it mutually binds both parties to submit claims exclusively to arbitration."

---

[7]  Plaintiff's argument regarding the adequacy of consideration may well fall into the category of challenges to the contract as a whole, which — provided there is evidence to show mutual manifestation of intent to the arbitration clause — would have to be resolved by an arbitrator.  *See* R&R 20–21 (noting that Plaintiff's argument that the Terms of Service agreements are unenforceable, because the right to online play was already acquired when the original purchase was made, was a challenged to the validity of the contract as a whole); *Damato v. Time Warner Cable, Inc.*, No. 13-CV-994, 2013 WL 3968765, at *6 (E.D.N.Y. July 31, 2013) (collecting cases holding that an argument that a contract was not supported by consideration was for an arbitrator to decide).  Under New York, an arbitration clause need not be supported by consideration separate or independent from that supporting the rest of the contract.  *See Clinton v. Oppenheimer & Co. Inc.*, 824 F. Supp. 2d 476, 484 (S.D.N.Y. 2011) (adopting report and recommendation, which noted "'mutuality of remedy is not required in arbitration contracts' as long as 'there is consideration for the entire agreement that is sufficient'" (quoting *Sablosky v. Edward S. Gordon Co., Inc.*, 73 N.Y.2d 133, 137 (1989)).  However, in this case, the Court determines that the arbitration clause, because it is mutual, does contain independent consideration and therefore addresses the argument below.

13

(collecting cases)); *Teah*, 2011 WL 6838151, at *5 ("There is clearly adequate consideration for the arbitration agreement, as it binds both parties to arbitrate their claims, and formed part of a valid employment agreement." (citing *Sablosky v. Edward S. Gordon Co., Inc.*, 73 N.Y.2d 133, 137 (1989) and *Matter of Ball*, 665 N.Y.S.2d 444, 446 (App. Div. 1997))); *Kopple v. Stonebrook Fund Mgmt., LLC*, 794 N.Y.S.2d 648, 648 (App. Div. 2005) ("The parties' mutual promises to arbitrate constituted consideration sufficient to support the arbitration agreement." (collecting cases)).

Plaintiff himself may have entered into two contracts: the point of purchase contract with the retailer, and the agreement for online play with EA.  However, the Court need not delve into the obligations of the relevant parties under either.  The extent to which EA was required to provide Plaintiff with online access gets to the heart of the matter, and is an issue for arbitration. In this case, the arbitration clause binds both parties, stating that "either [party] may elect to have the Dispute finally and exclusively resolved by binding arbitration."  (Sept. 2012 Terms § 20B; Aug. 2011 Terms § 20B.)  This is, on its face, sufficient consideration.  *See Marciano*, 14 F. Supp. 3d at 337.  To the extent Plaintiff claims EA's promise to arbitrate was invalid because it was illusory, that argument is addressed below.

Plaintiff also objects to Judge Gold's conclusion that Plaintiff and EA both manifested assent to the agreement to arbitrate, again relying on his two-contract theory.  Plaintiff's arguments about whether the arbitration clause was part of a "clickwrap" or "shrinkwrap"-type agreement merely reiterate his arguments made to Judge Gold.  (*Compare* Pl. Mem. 10–11 *with* Pl. Obj. 5–9 *and* Pl. Mem. 16, 20–21 *with* Pl. Obj. 9–11.)  The Court has reviewed Plaintiff's Objections and Judge Gold's recommendations and, finding no clear error, adopts the conclusion of the R&R that an agreement to arbitrate was formed.  *See Rahman*, 2014 WL 688980, at *1 (a

court reviews arguments that are mere reiteration of arguments presented to magistrate judge for clear error); *see also Hines v. Overstock.com, Inc.*, 380 F. App'x 22, 25 (2d Cir. 2010) ("New York courts find that binding contracts are made when the user takes some action demonstrating that they have at least constructive knowledge of the terms of the agreement, from which knowledge a court can infer acceptance."); *Nicosia v. Amazon.com, Inc.*, No. 14-CV-4513, 2015 WL 500180, at *7 (E.D.N.Y. Feb. 4, 2015) (applying Washington law, finding that plaintiff assented to [c]onditions of [u]se posted on Amazon.com each time he completed a purchase, "[g]iven (1) the conspicuous placement of the hyperlink to the current [c]onditions of [u]se on the checkout page, (2) the express warning at checkout that his purchases were subject to the terms of the current [c]onditions of [u]se, and (3) the fact that he expressly agreed, when signing-up for an Amazon.com account, to be bound by the terms of the [c]onditions of [u]se (including a provision notifying him that the conditions are subject to change)"); *Valle v. ATM Nat., LLC*, No. 14-CV-7993, 2015 WL 413449, at *3 (S.D.N.Y. Jan. 30, 2015) (collecting cases, noting that continued use of an account or online account constitutes acceptance of revised terms of use, including arbitration agreement).

### ii. Challenges to validity of arbitration agreement

#### 1. Illusory promise

In response to Plaintiff's argument that the agreement to arbitrate is unenforceable because it contained an illusory promise, Judge Gold determined that the challenged provision, giving EA the unilateral right to modify the contract with thirty-day notice and an opportunity to opt-out, is not illusory. (R&R 14–18.) He concluded:

> [I]n light of the nature of the rights at issue, the price of the products, the fact that the arbitration provision was never materially changed, and the thirty-day period to object following any change . . . the arbitration agreement's unilateral modification

provision does not render it illusory or otherwise unenforceable.

(R&R 18.) Plaintiff argues that Judge Gold's conclusion was clear error and the arbitration

agreement is not binding because it is illusory, due to the fact that EA had the ability to

unilaterally modify the Terms of Service. (Pl. Obj. 11–18.) Plaintiff argues (1) that the notice

provided for in the Terms of Service is insufficient, (*id.* at 12–13, 15–16), (2) that Judge Gold is

incorrect to rely on the nature of the rights involved, (*id.* at 13–14), and (3) EA did not need to

exercise its power to modify the arbitration clause to render it illusory, (*id.* at 17–18).

      As an initial matter, some district courts in this Circuit have determined that a challenge

to a unilateral modification clause is a challenge to the contract as a whole, and must be referred

to an arbitrator. *Damato*, 2013 WL 3968765, at *6 (referring question of whether unilateral

modification clause, contained in a different section of agreement, render arbitration clause

illusory to arbitrator); *Nicosia*, 2015 WL 500180, at *8 (citing *Damato*, 2013 WL 3968765, at *6

and *Gilroy v. Seabourn Cruise Line, Ltd.*, No. C12–107Z, 2012 WL 1202343, at *5 (W.D. Wash.

Apr. 10, 2012)). However, because Plaintiff's challenge may be read to target only the

arbitration clause, including the modification clause therein, and not the contract as a whole, the

Court entertains Plaintiff's argument below.

      The Court agrees with Judge Gold's conclusion that the arbitration provision was not

invalid as illusory simply because EA had the unilateral right to modify the agreement. Under

New York and California law, the fact that one party to an arbitration agreement has the

unilateral right to modify that agreement does not automatically render the agreement illusory, as

"the discretionary power to modify or terminate an agreement carries with it the duty to exercise

that power in good faith and fairly." *John v. Hanlees Davis, Inc.*, No. 12-CV-2529, 2013 WL

3458183, at *6 (E.D. Cal. July 9, 2013) (applying *24 Hour Fitness, Inc. v. Superior Court*, 78

Cal. Rptr. 2d 533, 541–42 (Cal. Ct. App. 1998), to hold that one party's unilateral right to modify

16

an agreement did not render arbitration clause illusory or unenforceable); *see also Lebowitz v. Dow Jones & Co.*, 508 F. App'x 83, 84–85 (2d Cir. 2013) ("Under New York law, a contract is not illusory merely because its terms give discretion to one party to the contract . . . as every contract encompasses the implied duty of good faith and fair dealing." (citations omitted)); *Fishoff v. Coty Inc.*, 634 F.3d 647, 653 (2d Cir. 2011) ("Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion." (quoting *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995)) (internal quotation marks omitted)); *Serpa v. Cal. Sur. Investigations, Inc.*, 155 Cal. Rptr. 3d 506, 514 (Cal. Ct. App. 2013) ("[I]t has long been the rule that a provision in an agreement permitting one party to modify contract terms does not, standing alone, render a contract illusory because the party with that authority may not change the agreement in such a manner as to frustrate the purpose of the contract." (citations omitted)).  Thus, the analysis of whether a unilateral right to modify an arbitration agreement renders that agreement illusory and unenforceable turns on reasonableness and fair notice.  *See Miguel v. JPMorgan Chase Bank, N.A.*, No. 12-CV-3308, 2013 WL 452418, at *6 (C.D. Cal. Feb. 5, 2013) ("[A]rbitration agreements that allow a party to prospectively modify them with notice are enforceable and not illusory." (citing *24 Hour Fitness, Inc.*, 78 Cal. Rptr. 2d at 541–42)); *Serpa*, 155 Cal. Rptr. 3d at 514 (applying same rule from *24 Hour Fitness* to arbitration agreements); *see also Lebowitz*, 508 F. App'x at 84–85 (noting New York courts will examine the reasonableness of a defendant's actual behavior before determining that a contract is illusory).

Judge Gold concluded that "the conduct of [EA] in this case, considered in context, was reasonable and consistent with its duty of good faith."  (R&R 17.)  Judge Gold determined that although EA Online registrants only received "passive notice" through EA's posting the terms on

17

the website, the Terms of Service were not illusory as they were implemented.  (R&R 15–18.)

The Court agrees.  Plaintiff's objection to Judge Gold's conclusion that the "significance of the

rights at issue" is relevant to analyzing the illusoriness of the agreement misses the mark.  Judge

Gold, in analyzing whether EA's behavior was reasonable in context, determined that EA

behaved consistently in accordance with its duty of good faith and fair dealing, given the nature

of the contract.  (R&R 17.)

       In this case, EA's power to modify the arbitration clause was subject to sufficient

limitations on the exercise of that power.  As Judge Gold determined, EA had an express

obligation to provide Plaintiff with indirect notice of any changes, by posting such changes on its

website.  According to the Terms of Service, EA is required to provide updated Terms of Service

on its website, which terms become prospectively effective thirty days from the date of posting.

(Sept. 2012 Terms 1; Aug. 2011 Terms 1.)  Plaintiff was able to opt-out of changes to the

arbitration agreement by sending EA written notice within thirty days of the change.  (Sept. 2012

Terms § 20G; Aug. 2011 Terms § 20G.)  Furthermore, EA specifically limited the application of

the arbitration agreement to the "extent allowable by law," (Sept. 2012 Terms § 20; Aug. 2011

Terms § 20), which includes EA's obligations under the implied duty of good faith and fair

dealing.  *See Fishoff*, 634 F.3d at 653.

       Although EA did modify the Terms of Service on at least one occasion, that modification

was reasonable under the circumstances, and consistent with EA's duty to act in good faith.  It is

EA's practice to require EA Online registrants to "affirmatively accept" new versions of the

Terms of Service or Privacy policy by going through a process similar to initial registration.

(Windrem Decl. ¶ 27.)  Indeed, Defendant's records reflect that Plaintiff was presented with and

accepted both the current version and the August 25, 2011 version of EA's Terms of Service.

(*Id.* ¶ 30; Account Management Tool for justintbassett@gmail.com, annexed to Windrem Decl. as Ex. 20.)  Thus, the Court finds that not only was Plaintiff provided with passive notice, but he was in fact given actual notice of at least one modification, which he accepted.  When confronted with the Terms of Service, a reasonably prudent user in Plaintiff's position would have had notice that he was being bound by the Terms of Service, including the arbitration provision.  *See Valle*, 2015 WL 413449, at *3 ("Courts have held that customers accept revised terms of their accounts by continuing to use their accounts after receiving the revised terms.") (collecting cases); *see also Schnabel*, 697 F.3d at 120 ("[I]n cases such as this, where the purported assent is largely passive, the contract-formation question will often turn on whether a reasonably prudent offeree would be on notice of the term at issue."); *Nicosia*, 2015 WL 500180, at *7 (applying Washington law, finding plaintiff was "put on inquiry notice of the current terms each time he made a purchase, as a conspicuous hyperlink to the current [c]onditions of [u]se was presented to and agreed to by Plaintiff, each and every time he made a purchase." (internal quotation marks, alterations and citation omitted)).

Plaintiff further raises a number of objections to specific points of Judge Gold's analysis that are unpersuasive.  First, Plaintiff's reliance on *Merkin v. Vonage America, Inc.*, 13-CV-8026, 2014 WL 457942 (C.D. Cal. Feb. 3, 2014), for the conclusion that the unilateral power to change a contract and only provide notice by posting changes on a website makes the contract illusory, is misplaced.  In *Merkin*, the court specifically stated that "the Court's focus is not on whether Vonage's power to modify the [Terms of Service] makes the [Terms of Service] illusory."  2014 WL 457942, at *7.  Instead, the court's analysis turned on the defendant's actual and repeated modification of the terms of service at issue and whether that made the contract "oppressive," and thus unconscionable.  *Id.*  Therefore, *Merkin* does not weigh directly on the

19

analysis at issue.  Plaintiff also argues that EA need not have exercised its power to modify the agreement for the arbitration clause to have been illusory.  (Pl. Obj. 17.)  In support of this objection, Plaintiff relies on *Grosvenor v. Quest Corp.*, 854 F. Supp. 2d 1021 (D. Colo. 2012).  However, the court in *Grosvenor* considered it significant that not only were changes to terms and conditions posted on a website with only thirty days' notice, but users had no power to accept or reject any such changes.  *Grosvenor*, 854 F. Supp. 2d at 1034 ("A notice requirement becomes significant when it is coupled with the right to accept or reject the change.").  In this case, Plaintiff had the power to reject changes to the arbitration provision, consistent with the procedures outlined therein.  (Sept. 2012 Terms § 20G; Aug. 2011 Terms § 20G.)  None of Plaintiff's objections illuminate clear error in Judge Gold's R&R.

Given that EA provided Plaintiff with reasonable notice of the terms and the ability to opt out of or accept the new terms, for the reasons stated above and the reasons outlined in the R&R, the Court determines that the agreement to arbitrate was not illusory.

### 2.    Unconscionability

Judge Gold also determined that the agreement to arbitrate was not invalid on grounds on unconscionability.  (R&R 18–20.)  Neither party objected to this finding.  Seeing no clear error in the analysis, the Court adopts this finding.

### c.    Unopposed recommendations

Plaintiff did not object to Judge Gold's recommendations that the court (1) stay this action pending arbitration, pursuant to Section 3 of the FAA,[8] and (2) deny EA's motion to

---

[8]  Finding that the claims were subject to mandatory arbitration, Judge Gold analyzed whether the Court should stay the action pending the outcome of arbitration or dismiss the action in its entirety, as EA urges.  (R&R 21.)  Judge Gold recommended that the Court stay this action pending arbitration.  (R&R 22.)  There were no timely objections to this recommendation.

transfer venue without prejudice to renew at a later time.  The Court has reviewed the unopposed portions of the R&R, and, finding no clear error, the Court adopts those recommendations pursuant to 28 U.S.C. § 636(b)(1).

## III.  Conclusion

For the foregoing reasons, the Court adopts Judge Gold's recommendations, and (1) grants EA's motion to compel arbitration; (2) stays this action pending arbitration pursuant to Section 3 of the FAA; and (3) denies EA's motion to transfer venue without prejudice to renewal if there is to be further litigation following arbitration.

SO ORDERED:

_____
        s/ MKB
MARGO K. BRODIE
United States District Judge

Dated: March 23, 2015
       Brooklyn, New York